ANDREWS ET AL. *v.* STATE OF INDIANA.

[No. 30,812. Filed October 9, 1967.]

526

*Trennepohl, Berger & Shoup,* of Angola, for appellants.

*John J. Dillon,* Attorney General, and *Donald R. Ewers,* Deputy Attorney General, for appellee.

LEWIS, J.—This is an interlocutory appeal from the Steuben Circuit Court in an action brought by the State of Indiana. The appellee seeks to condemn and appropriate permanent easements and certain lands owned by the appellants under the provisions of the eminent domain statutes relating to the acquisition of land for highway purposes. The appellee filed its complaint for condemnation, setting forth the description of appellants' land which appellee alleged was necessary for the carrying out of a certain highway improvement project identified as State Road No. I-69.

The appellants filed written objections to the proceedings alleging that:

"Appellee is without any right to exercise the power of eminent domain for the use sought in respect of the particular parcels of Appellants' land described in the complaint; the right of way easement sought in Parcel 8-A in these proceedings is neither needed nor reasonably necessary for the location, relocation, construction, reconstruction, repair, and maintenance of any state highway, nor for the relocating, widening, or straightening of any highway, nor for the clearing and removing of obstructions to vision at any highway crossing or curve, nor for any other highway purpose reasonably incident thereto; one of the parcels (8-A) over which Appellee seeks a permanent right of way easement is not located on the side of or adjacent to or near an arterial or express highway and such an easement would not be useful for control of access to any such highway; the easement sought over one of the parcels (Parcel 8) would be of benefit to only a few private persons and would not benefit the public generally; no necessity exists for the taking of an easement over said Parcel 8; the uses for which the easements are sought are not public uses; prior to the commencement of this action the Appellee, State of Indiana, on November 12, 1963, filed a condemnation action against these same Appellants, seeking to acquire the same rights in and to the same property as it seeks to acquire in the same way in these proceedings. Summons was issued in said earlier proceedings for each of Appellants, who thereupon retained counsel and appeared and filed written objections, whereupon the State of Indiana dismissed said earlier proceedings, all prior to the filing of the complaint in the present proceedings, and that Appellee is without right to resort to a succession of condemnation proceedings with a view to acquiring Appellants' property at its own price by harassing Appellants into involuntary submission."

The Steuben Circuit Court overruled appellants' objections and this appeal was prosecuted.

Substantially, it is the appellants' contention that:

(1) The State of Indiana is without right to condemn appellants' land because the taking would serve no public purpose.

(2) The State of Indiana may not assume the position that reduction of damages serves a "public use."

(3) The State of Indiana has no right to subject appellants to a second identical condemnation action.

Appellants' objection (1) states in substance that appellants' land will not serve a public purpose. The factual situation of the design and improvement of State Road No. I-69 is important. Appellants' land will not become a part of State Road No. I-69, but rather is intended to be used as a frontage road to reach the property of one Baldwin. The parties concede that the proposed frontage road across appellants' property would serve only the Baldwin property which would be completely land-locked if a frontage road is not installed. Appellants contend that since only Baldwin's property will be served, this is not a public use within the meaning of the condemnation statute.

It should be noted that the Legislature did, in 1957, adopt the following statute, Burns' Indiana Statutes, Anno., § 36-2949, [1949 Repl.], (1967 Cum. Pocket Supp.) :

"The rights of acquiring land or a right, easement or interest therein conferred upon the department shall apply to acquiring lands, rights, easements and interests in land for frontage or service streets and roads, auxiliary to and located on the side of or near an arterial or express highway for service to abutting property and adjacent areas and for control of access. All easements and rights acquired by the department may be acquired in perpetuity." Acts 1957, ch. 148, § 6, p. 309.

The foregoing statute expressly gives the State Highway Commission as the agent for the appellee, the power to take land for additional service and frontage roads.

Since the road in question serves only one individual's land, we are faced with the issue as to whether or not such a road constitutes a public use or a private use.

The appellants cite for their authority, principally, two Indiana cases. First, *Fountain Park Company* v. *Hensler* (1927), 199 Ind. 95, 155 N. E. 465. This case questioned the right of the Legislature to give Chautauqua companies the power of eminent domain. The right of the Legislature to

delegate the power of eminent domain upon a private corporation to take private property was raised. This Court held the classification to be an arbitrary and capricious one and stated that the operation of the Chautaugua companies did not constitute a "public use." We believe the case is not particularly helpful as an analogy here, especially in view of Burns', § 36-2949, supra. Secondly, *Kessler* v. *City of Indianapolis* (1927), 199 Ind. 420, 157 N. E. 547, decided in 1927, involved the Park Department of the City of Indianapolis and a property owner. The Park Department attempted to condemn a right of way from Mrs. Kessler in order that a neighbor of Mrs. Kessler's property might have access to Pleasant Run Boulevard. A close examination of the *Kessler* case reveals that the facts are clearly distinguishable from the case at bar and this 1927 decision falls far short in being helpful in the determination of this case, particularly in the light of the enabling statute, Burns', § 36-2949, supra, passed subsequently to the decision in that case.

We believe we must look to the over-all plan for State Road No. I-69 and realize that with large interstate highways being designed with only limited access, frontage roads become necessary to relieve land-locked property. In furtherance of this purpose the General Assembly passed the following legislation:

"The legislature hereby determines and declares that this act is necessary for the immediate preservation of the public peace, health and safety and for the promotion of the general welfare." Acts 1945, ch. 245, § 1, p. 1113, Burns' Indiana Statutes, Anno., § 36-3101, [1949 Repl.].

"For the purposes of this act, such authorities of the state, counties, cities, or towns, may acquire private or public property and property rights for limited access facilities and service roads, including rights of access, air, view, and light, by gift, devise, purchase or condemnation in the same manner as is now or hereafter may be provided by law to acquire such property or property rights for the laying out, widening or improvement of highways and streets within their respective jurisdictions. In the acquisition of prop-

erty or property rights for any limited access facility or portion thereof, or service road in connection therewith, the state, county, city or town, may, in its discretion, acquire an entire lot, block, or tract of land, if by so doing, the interests of the public will be best served, even though said entire lot, block, or tract is not immediately needed for the right-of-way proper but is otherwise useful or necessary in the carrying out of the purposes of this act. The rights of all property owners who may claim damages, as provided by the Constitution of the state of Indiana, are preserved herein and may be enforced under the present laws of the state of Indiana." Acts 1945, ch. 245, § 5, p. 1113, Burns' Indiana Statutes, Anno., § 36-3105, [1949 Repl.].

"The highway authorities of the state, county, city, or town, may designate and establish limited access highways as new and additional facilities or may designate and establish an existing street or highway as included within a limited access facility. The state or any of its subdivisions or municipalities shall have authority to provide for the elimination of intersections at grade of limited access facilities with existing state and county roads, and city and town streets, by grade separation or service road, * * *" Acts 1945, ch. 245, § 7, p. 1113, Burns' Indiana Statutes, Anno., § 36-3107, [1949 Repl.].

"In the carrying out of the purposes of this act and in the development of any limited access facility the state highway commission of Indiana and the several counties, cities and towns of the state are authorized to plan, designate, establish, use, regulate, alter, improve, maintain, and vacate local service roads and streets or to designate as local service roads and streets any existing road or street, and to exercise jurisdiction over service roads in the same manner as is authorized over limited access facilities under the terms of this act, if in their opinion, such local service roads and streets are necessary or desirable. Such local service roads or streets shall be of appropriate design, and shall be separated from the limited access facility proper by means of all devices designated as necessary or desirable by the proper authority." Acts 1945, ch. 245, § 9, p. 1113, Burns' Indiana Statutes, Anno., § 36-3109, [1949 Repl.]. See also, Burns', § 36-2949, supra.

Modern travel called for non-access highways; such highways, in turn, necessitated a completely new method of design and land acquisition. The appellee has afforded us the following case which is helpful, to-wit: *Luke* v. *Massachusetts*

*Turnpike Authority* (1958), 149 N. E. 2d 225, 337 Mass. 304. The facts are substantially as follows:

Mrs. Luke's land was bounded on the west by that of Powers and on the east by that of Ford. The toll road left Powers without access to any public or private way. At the same time, the Authority purported to take a permanent easement across the land of Luke and Ford to provide access to the remaining Powers land. Mrs. Luke contended that the taking of the private way was beyond the power granted the Authority by the Legislature; and in the alternative, if the Legislature did purport to grant such power, the grant was unconstitutional. The Massachusets court, in sustaining the Turnpike Authority, stated as follows:

"* * * If the easement or the private way should be viewed in the abstract, no public purpose would appear. Such an approach, however, would be closing the eyes to reality. The laying out of the turnpike the length of the Commonwealth and the acquisition of numerous sites essential to that object are attributes of one huge undertaking. Procuring an easement and creating a right of way for the benefit of parcels of land incidentally deprived of all or of some means of access to an existing way are but a by-product of that undertaking. * * *"

Mrs. Luke further contended that the power to condemn her land for the purpose of giving her neighbor access was not spelled out in the act by which the Authority received its power. In answer to this, the court stated as follows:

"We do not agree that the absence of precisely similar language in St. 1952, c. 354, is indicative of a legislative policy limiting the authority's powers as to taking easements in the performance of this 'essential governmental function.' * * *"

See also, *Department of Public Works* v. *Farina* (1963), 194 N. E. 2d 209, 29 Ill. 2d 474, and the following language therein:

"A freeway is not an ordinary highway, but is an entirely new concept in highways which has made its appearance in

recent years as a result of the many changes in the lives and mobility of the general public brought out by the introduction and increasingly prevalent use of the automobile. A freeway is a limited access highway where ingress and egress may be had only at certain designated points which are to be determined by the highway authorities. The very purpose of such roads is to provide fast and safe through traffic. To bring this about it is necessary that there be limited access to the highway thereby eliminating danger of accidents and also affording economic advantages which would best serve the public interest. Freeways or limited access highways are of no use, however, if the public is not provided reasonable means to enter and leave the highway system. It is imperative, therefore, that, although access to the freeway be limited, reasonable access also be granted to those requiring use of the highway. It is for that purpose that the Freeways Act specifically authorizes the acquisition and construction of local service drives to provide access to freeways from adjacent areas."

Objection (2) filed by appellants is substantially as follows: The State of Indiana may not assume the position that reduction of damages serves a "public use." Appellee argues that if, in truth and fact, the service road would have the effect of reducing the damages to be paid to the Baldwins, this situation would give rise to a "public use." Appellants, however, argue this is not tenable since the law fixes the damages payable to the Baldwins at the time the notice was served upon them by the State that it had commenced a condemnation action. We are unable to agree with the appellants on this contention.

The layout and design of the interstate complex would indicate that the Baldwins were to have access through a service road at the time the condemnation was filed, so the basic premise alluded to by the appellants that the damages to Baldwins is fixed on the date of the taking without giving significance to the service road is in error. The overall design and plans and specifications for State Road No. I-69 and all service roads were known and available at the time of the filing of the complaint and the issuing of notice to the Baldwins.

In truth and in fact, we must conclude that a service road would alleviate a land-locked condition of the Baldwin property and would certainly have the effect of reducing the amount of damages payable to the Baldwins. If the State of Indiana is not in a position to minimize the damages paid to land owners, then the cost of Interstate Highways would soar astronomically and Indiana would be dotted abnormally with land-locked real estate. We believe that in planning and providing for condemnation of service roads, under Burns', § 36-2949, supra, the Legislature properly intended such service roads would constitute a public use whether such road served one property owner or many. We so hold.

The appellee filed an action in 1963 seeking condemnation of the subject real estate and later dismissed that action. Thereafter, in 1965, another condemnation was filed. It is appellants' contention that the fact that two identical actions were filed for the subject real estate constitutes vexatious litigation and supports appellants' contention raised in objection (3).

Appellants rely upon *Lake Agricultural Company et al.* v. *Brown et al.* (1917), 186 Ind. 30, 114 N. E. 755, in which certain dicta is announced concerning vexatious litigation. A careful examination of *Lake Agricultural Company et al.* v. *Brown et al.*, supra, will reveal that this Court was not impressed with the argument concerning vexatious litigation and did not make a judicial determination on that basis. In that case the Court concluded that as to whether or not a cause of action was vexatious was a matter for the sound discretion of a Trial Court and, in the absence of a showing of abuse of discretion, the Trial Court would be affirmed.

We relate the case at bar to *State of Indiana* v. *Flamme, et al.* (1940), 217 Ind. 149, 26 N. E. 2d 917, in which this Court made the following statement with reference to vexatious litigation:

"It does not appear to be important that the state may attempt to abuse its privileges by resorting to a succession of condemnation proceedings with a view of acquiring appellee's property at its own price, or harassing them into involuntary submission. There is ample authority for the intervention of courts of equity to prevent such abuses."

We must conclude that the objection to condemnation on the basis of vexatious litigation is not tenable in the case at bar.

The Trial Court properly overruled the objections of the appellants and the judgment is affirmed.

Hunter, C. J., Arterburn, Jackson and Mote, JJ., concur.

NOTE.—Reported in 229 N. E. 2d 806.