STATE OF INDIANA *v.* GORDON SMITH AND JOAN SMITH, HIS WIFE,
TENANTS IN COMMON; JOHN T. HUME III AND NANCY HUME, HIS WIFE,
TENANTS IN COMMON; ROBERT W. GEDDES AND JANICE GEDDES, HIS
WIFE, TENANTS IN COMMON; AUDITOR OF MARION COUNTY; TREASURER
OF MARION COUNTY

[No. 2-976A341. Filed October 16, 1978.]

*Theodore L. Sendak,* Attorney General of Indiana, *Wesley T. Wilson,* Deputy Attorney General, for appellant.

*John C. Green, Harold W. Jones, Smith and Jones,* of Indianapolis, for appellee.

CHIPMAN, P.J. — The State of Indiana filed a condemnation action in 1975 seeking to appropriate a parcel of land in Indianapolis, Indiana owned by the Defendant-appellees (Owners). The trial court dismissed the action and permanently enjoined the State from appropriating the parcel of land. On appeal, the State alleges that the trial court erred as follows: 1) in dismissing and denying the State's complaint for appropriation of real estate and in sustaining the owners' objections to the appropriation and 2) in permanently enjoining the State from appropriating the subject property.

We affirm the dismissal of the condemnation proceeding and reverse as to the issuance of a permanent injunction.

## FACTS

To clarify matters involved in this appeal we will refer to the following sketch:

#1 & #2 — Real estate owned by Donald Meek on which Modern Photo Offset Supply Company conducts business.
#3, #4 & #5 — Real estate owned by Appellees.

The evidence submitted to the trial court establishes the following sequence of events:

| | |
|---|---|
| February 15, 1966 | Plans approved for Interstate I-65 for the inner city belt (parcel #4 was not included). |
| 1967 and 1971 | Donald Meek acquired tracts #1 & #2 and used them to conduct the business of Modern Photo Offset Supply Company. |
| January 1974 | Appellees acquired tracts #3, #4, & #5. |
| May or June 1974 | Donald Meek offered to purchase tracts #3, #4, & #5 from appellees. |
| Fall, 1974 — March 1975 | Appellees tore down a four story building located on tracts #3, #4, & #5. |
| April 1975 | Donald Meek made a second offer to purchase tracts #4 & #5 from appellees. |
| Early 1975 | Donald Meek talked to representatives of the Indiana State Highway Commission concerning the difficulties of trucks entering the alley from Market Street. |
| June 1975 | Meeting was held by Chief Operations Manager of Design, and Chief Engineer of the Highway Commission concerning parcel #4. |
| June 24, 1975 | Revised plans were prepared by the State Highway Commission to acquire parcel #4. |
| August 1975 | A representative of the State approached appellees concerning the acquisition of tract #4. |
| September 24, 1975 | Resolution adopted by Indiana State Highway Commission authorizing the taking of parcel #4. |

Mr. Meek conducted a business called Modern Photo Offset Supply Company (Modern Photo) on parcels #1 and #2. Delivery trucks for this business loaded and unloaded at a door located on the east or alley side of the building on tract #1. These trucks normally entered the alley from the south by turning off of Market Street.

The Indiana State Highway Commission designed and built Interstate 65 a short distance to the east of the area in question and provided an access ramp in the middle of Market Street. The construction of this ramp reduced the width of Market Street and as a result semi-tractor trailer delivery trucks were unable to negotiate the necessary turn from Market Street into the alley unless the opening to the south end of the alley was widened.

Wabash Street, on the north side of Modern Photo, was approximately 30 feet in width and with Modern Photo buildings located on parcels #1 and #2 semi-tractor trailers could not make the turn into the alley from that street. The record shows that this type of truck could enter from Ohio Street, one block to the north and parallel with Wabash Street, but frequently this alley was blocked by utility vehicles. In addition these semi delivery trucks were unable to exit the alley onto Market Street or Wabash Street and therefore would be required to back out the twelve foot alley a block and a half to the north to Ohio Street.

Based on the record Modern Photo had two additional freight doorways which gave access to the building on parcel #1. One was located on the north or Wabash Street side and the other was on the west side of the building. The use of the west door was complicated by the fact that the area to the west of the building was used as off street parking by Modern Photo employees and customers and the level of the parking lot was higher than the main floor of the building.

Mr. Meek, in behalf of Modern Photo, attempted unsuccessfully to purchase from the Owners all or a portion of parcels #3, #4, and #5. In early 1975, either before or after his second proposal to purchase, Mr. Meek had a conference with representatives of the Indiana State Highway Commission. In June of 1975 plans were prepared by the Commission draftsmen to acquire parcel #4, the subject of this condemnation action. The dimensions of parcel #4 were determined by the turning radius of a "WV 50 truck" or semi-tractor trailer truck in order to clear the retaining wall of the access ramp located in Market Street. From the transcript it appears that Modern Photo is the only business that had semi-tractor trailers or WV 50 trucks making use of the public alley.

## I. Dismissal of State's Complaint

The State argues that the attempted taking of parcel #4 under its power of eminent domain was proper since, in this case, it would be for a public purpose while the owners contend that the acquisition of their land would be for a private use. The determination of this issue therefore turns on whether the attempted taking was for a public or private use since both the Indiana and Federal Constitutions prohibit the taking of private property for private use.[1]

The State maintains that it established the taking was for a public use and relies heavily on *Andrews v. State* (1967), 248 Ind. 525, 229 N.E.2d 806 to support this contention. As it applies to this appeal, *Andrews* holds that providing a service road to a land-locked owner in accordance with Burns' § 36-2949 (IC 8-13-2-6) would reduce the damages payable to that owner and therefore would constitute a public use. If it were not so, the rationale was that the cost of Interstate Highways would soar astronomically and Indiana would be dotted abnormally with land-locked real estate. (*Andrews, supra* page 810)

The facts in this case show that Modern Photo was not land-locked by either the construction of Interstate 65 through Indianapolis or the access ramp in Market Street. The problem presented by the construc-

---

1. Our Supreme Court, by Justice Prentice, stated in *Pulos v. James* (1973), 261 Ind. 279, 302 N.E.2d 768, 771:

Article I, Sections 21 and 23 of the Indiana Constitution read as follows:
"Sec. 21. * * * * No man's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered."

"Sec. 23. The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

The due process clause of the Fourteenth Amendment to the United States Constitution reads as follows: "Nor shall any state deprive any person . . . of property, without due process of law." These sections of our Indiana Constitution and the United States Constitution prohibit the taking of private property for a private use. *Fountain Park Co. v. Hensler* (1927), 199 Ind. 95, 155 N.E. 465; *Logan v. Stogsdale* (1890), 123 Ind. 372, 24 N.E. 135; *Stewart v. Hartman* (1874), 46 Ind. 331; *Wild v. Deig* (1873), 43 Ind. 455.

*See also*, 1 Nichols, *Eminent Domain* § 4.11 [1] (3rd ed. 1964).

tion of the ramp was that semi-tractor trailer trucks delivering goods to Modern Photo could not enter the public alley from Market Street. There was, however, an approach into this same alley from Ohio Street, two blocks to the north of Market Street and in addition, Modern Photo had freight doors on the north and west side of its building.

It is noted that this appropriation was not planned at the time I-65 and the Market Street access ramp were designed and therefore the Indiana State Highway Commission's resolution to September 24, 1975 was inaccurate when it states "Whereas, the failure to obtain said land for said purposes is delaying the work of said highway improvement" (the highway improvement is referring to I-65 which was to be constructed from Jeffersonville and New Albany, Indiana through Indianapolis to the Gary interchange on the east and west tollroad in Lake County). At the time this resolution was adopted the ramp and I-65 in this area had been constructed.

The facts in this case are distinguishable from the *Andrews* case and clearly established that the design of the land to be acquired by the condemnation proceeding was for Modern Photo and hence a private use. It was not until Mr. Meek talked with representatives of the Indiana State Highway Commission that consideration was given to the taking of the Owners' land and the highway engineer established the dimensions of the take based on the turning radius of a WV 50 (semi-tractor trailer) truck.

The State failed to establish that Modern Photo would be entitled to damages as a result of the construction of the Market Street ramp. Assuming for the sake of argument that Modern Photo would be entitled to damages then the question is whether these damages would be more than would be awarded to the Owners in this case. If Modern Photo's damages were less than would have been awarded in this case then logically *Andrews* would not apply.

The institution of private property constitutes an integral part of the freedom, security and independence we enjoy and in order for the State to unleash the power of eminent domain under the reduction of damage rationale it is incumbent that the State establish at the trial level that these costs would be less. The State must not capriciously resort to the power of eminent domain when other

suitable and perhaps less expensive alternatives are available to contend otherwise is to repudiate our time honored concept of private property and the paramount value we place upon it.[2]

We agree with the trial court that the State improperly attempted to appropriate the Owners' property for a private use in violation of their constitutional rights. Since the benefit to be derived from this take is wholly for Modern Photo, the use is a private one.[3] The trial court correctly dismissed the condemnation complaint since the State may not exercise its power of eminent domain for the purpose of establishing a private road from which the public at large will not derive a benefit.[4] We are, therefore, unable to find a clear showing that the trial court's denial of the State's action for condemnation was arbitrary or contrary to undisputed evidence.[5]

We affirm the dismissal of the complaint by the trial court.

II. Issuance of Permanent Injunction

The trial court was in error by permanently enjoining the State from appropriating parcel #4 of the Owners' property. Since appellees' could have and in fact did litigate their objection to this appropriation in a condemnation proceeding, they had an adequate remedy at law and therefore the injunction should not have been issued.[6] We find *Kessler v. City of Indianapolis* (1927), 199 Ind. 420, 157 N.E. 547, 550, dispositive of this issue:

> [A permanent injunction] would be manifestly improper even if the [land-owners] prevail. . . . A permanent injunction could not be entered which would forever prevent the appellee city from bringing subsequent proceedings in case the strip of ground was at any later time needed for [public] purposes.

---

2. Schimberg, *Eminent Domain—Economic Saving to the Government as the Sole Motivation for the Taking* 40 N.D.L. REV. 234, 237 (1965).

3. *See generally* 11 I.L.E. *Eminent Domain* § 5 (1958).

4. *Logan v. Stogdale* (1890), 123 Ind. 372, 24 N.E. 135, 136; 11 I.L.E. *Eminent Domain* § 9 (1958).

5. *Relick v. Penn-Harris-Madison School Corp.* (1970), 254 Ind. 281, 258 N.E.2d 845, 846.

6. *See generally* 11 I.L.E. *Eminent Domain* § 135 (1958).

We therefore reverse the lower court's issuance of this permanent injunction.

This cause is remanded to the trial court for appropriate action in accordance with this opinion.

Garrard and Staton, JJ., concur.

NOTE—Reported at 381 N.E.2d 873.