CONTINENTAL ENTERPRISES, INC., Plaintiff-Appellant,

v.

**Mildred CAIN, Defendant-Appellee.**

**No. 3–376 A 55.**

Court of Appeals of Indiana, Third District.

March 29, 1979.

Rehearing Denied May 14, 1979.

Kenneth A. King, Kendallville, for plaintiff-appellant.

John C. Thrapp, Thrapp & Thrapp, Kendallville, James R. Heuer, Gates & Gates, Columbia City, for defendant-appellee.

GARRARD, Presiding Judge.

Appellant (Continental) is the owner of a peninsula which extends into Sylvan Lake. Both the lake and peninsula were formed around 1838 when the state dammed the Little Elkhart River. This appeal stems from Continental's second unsuccessful attempt to acquire an easement over the only unsubmerged land adjoining the peninsula. In its earlier action Continental had relied on the common law doctrine of easement by necessity, but because its land and the adjoining land of appellee (Cain) had never been held by a common grantor, we held that unity of ownership had not been established and the easement could not be granted. *Continental Enterprises, Inc. v. Cain* (1973), 156 Ind.App. 305, 296 N.E.2d 170.

Continental's present effort is based on IC 32–5–3–1 which provides:

"In all cases where, heretofore or hereafter, the lands belonging to a landowner or to landowners in this state, shall have been shut off from a public highway, because of the straightening of any stream, or the construction of any ditch, under the laws of the state of Indiana, or by the erection of any dam constructed by the state of Indiana or the United States or any of their agencies or political subdivisions under the laws of the state of Indiana, and in case the owner or owners of lands thus affected cannot secure an easement or right-of-way on and over the lands adjacent thereto, and intervening between such lands and the public highways most convenient thereto, either because the adjacent and intervening landowner or landowners refuse to grant such easement, or because the interested parties cannot agree upon the consideration to be paid by the landowner or landowners so deprived of such access to the highway, he or they shall have such right of easement established as a way of necessity under the provisions of IC 1971, 32–11–1 [32–11–1–1—32–11–1–13]. [Acts 1935, ch. 56 § 1, p. 150: 1973, P.L. 302 § 1, p. 1613.]"

At trial the appellee contended that the statute was unconstitutional because it permitted the taking of private property for private purposes. The trial court did not reach the issue of whether the statute was

unconstitutional per se. It held that it was the intent of the legislature that the relief provided by this statute be available only to those who held title to affected land at the time it was deprived of access by the state, and that to construe the statute to allow a taking by a subsequent owner would sanction a taking for a private purpose in violation of the Indiana Constitution. In addition, the court found that Continental sought the easement for the private use of its land. Those grounds were sufficient to deny relief to the appellant.

Continental raises numerous challenges to the decision, most of which need not be resolved if it can be established that the easement sought would not serve a public purpose. We do point out, however, that Continental's contentions that the court had no authority to consider either the constitutionality of the statute or the intent of the legislature are without merit. Continental asserts that Cain failed to give the required notice to the Attorney General of the constitutional challenge to the statute. That claim is refuted by the record. Continental also contends that it was necessary for Cain to present evidence on the unconstitutionality of IC 32–5–3–1 and that she failed to do so, leaving the court with no basis to consider the challenge according to *Board of Commissioners of Howard County v. Kokomo City Plan Commission* (1975), 263 Ind. 282, 330 N.E.2d 92. However, Cain alleged that the particular condemnation desired by Continental would be a violation of the constitution. Thus, evidence which of necessity was presented by Continental as to the particular use to be made of the land to be condemned, determined whether the taking could be done within the confines of the constitution. By revealing that purpose, the divergent evidentiary goals of both parties were attained. Therefore, the trial court did not need to rule that IC 32–5–3–1 was unconstitutional. In finding that if applied as Continental wished, a constitutional violation would occur, the court decided the case so as to leave the statute, itself, in effect. Thus, the court acted within the scope of *Board of Commissioners of Howard County, supra*, 330 N.E.2d at 96.

Continental raises two arguments to support its claim that the trial court was not justified in attempting to ascertain the intent of the legislature in regard to the statute's retroactive applicability. It points to the use of the word "heretofore" in the statute as being sufficient to demonstrate an intent of retroactivity. Although Cain concedes that retroactivity is contemplated by the use of the word "heretofore," she urges that the language does not convey a meaning of *unlimited* retroactivity. She points out that a reading of "heretofore" with the words "lands belonging to a landowner or landowners" may imply limited retroactivity. That is, that the statute's relief is available at any time after access has been cut off to those who held title to the land at the time of the deprivation. We agree that the language chosen by the legislature does not mandate unlimited retroactivity and, therefore, the court was correct in attempting to determine the legislature's intent within the confines of the constitution.[1]

Moreover, we do not agree that the trial court could not construe the statute because Cain asserted a challenge which supported an interpretation of unlimited retroactivity. Cain had alleged that in response to our 1973 decision holding that a common law easement was unavailable, Continental's attorney succeeded in having IC 32–5–3–1 amended into its present form so that the statute would specifically cover Continental's situation. Even if we were to assume that Continental's attorney did secure the amendment, "the motives of the sponsors [of legislation] cannot be imputed to the Legislature unless there is basis for it in its statutory expression." *Tinder v. Clarke Auto Co., Inc.* (1958), 238 Ind. 302, 310, 149 N.E.2d 808, 818. The statute as expressed through its language does not

1. To hold otherwise would clearly raise doubts that the statute was constitutionally permissible.

clearly indicate applicability to Continental's situation, nor to others who have taken title to land after it has been deprived of access.

■ Both parties have presented arguments on the constitutionality of IC 32–5–3–1. However, because we can resolve this appeal without determining the constitutional validity of the statute, we need not and should not reach that issue. Rather we limit our discussion here to the question of whether the appellant has shown the one requisite factor which must attend any particular condemnation, regardless of its statutory authorization, and which must be present to assure that the specific taking is consonant with the constitution. Art. 1 § 21 of our Constitution provides that "[n]o man's property shall be taken by law, without just compensation." As is the case with similar provisions in other states, this language has been held to mean not only that compensation must be given for a condemnation for a public purpose, but also that private property may not be taken for a private purpose.[2] *Great Western Natural Gas & Oil Co. v. Hawkins* (1903), 30 Ind. App. 557, 66 N.E. 765; 26 Am.Jur.2d *Eminent Domain*, § 25. Continental asserts that the use to be made of the land it seeks to condemn will serve a public purpose.

■ Continental's complaint sought to have title to the proposed easement vested in itself and alleged the easement was necessary in order to "make use" and "obtain fair enjoyment" of the peninsula. After the decision of the trial court, Continental moved to amend its claim to allege a public purpose and to have title to the easement vested in the county. Because IC 32–11–1–5 states that if the objections made by a defendant in a condemnation action are sustained, the plaintiff may amend the complaint on appeal to this court or the Supreme Court, Continental urges that amendment is a matter of right. The trial court, however, denied the motion on the ground that evidence of public purpose had been taken into consideration when it made its finding that Continental sought the easement for a private purpose. The court correctly denied the motion. Amendments under IC 32–11–1–5 are proper only when necessary to make the complaint conform to the evidence. *Indianapolis Water Co. v. Lux* (1946), 224 Ind. 125, 64 N.E.2d 790. As can be seen from the discussion below, an allegation of public purpose was not supported by the evidence.

Continental argues that a public purpose may be found whenever property is made accessible for its fullest use, although no particular use is specified. At trial, however, it suggested two types of uses which we discuss in order to stress the fact that public purpose entails something more than accessibility by some members of the public.

■ Continental's president testified that although no plans had been drawn up, the peninsula might be used as a "church site or something of that nature." Such a use of the peninsula would not imbue the condemnation of the easement with a public purpose. The fact that the party seeking the condemnation is of a religious, educational or other "public benefit" nature does not entitle it to take private land for its own purposes rather than for public purposes. That view has been expressly disavowed lest ". . . churches, lodges, clubs, civic organizations, temperance organizations, theatres, circuses . . . an endless chain . . . ." acquire a power which is an attribute of sovereignty. *Fountain Park Co. v. Hensler* (1927), 199 Ind. 95, 115, 155 N.E. 465, 472.

■ It was also suggested that a road would enable the public to have access to Continental's beaches. This is no more sufficient to demonstrate public purpose than the suggestion that a religious group might be served.

---

2. IC 32–5–3–1, as amended, refers to IC 32–11–1–I, the general eminent domain act for the procedures to be followed in condemnation cases. The latter statute applies to anyone

". . . having the right to exercise the power of eminent domain for any *public use* . . ." (Emphasis added)

"The test whether a use is public or not is whether a public trust is imposed upon the property, whether the public has a legal right to the use, which cannot be gainsaid, or denied, or withdrawn at the pleasure of the owner." *Fountain Park Co. v. Hensler*, 155 N.E. at 470.

Assuming that the county took over the easement, the public could not be denied use of the road. However, there is nothing to prevent Continental from denying the public use of its own property. It makes no claim that, for example, it will turn over its beaches for a public park. Thus, no public purpose is served by providing a road which deadends into private property merely because there is a possibility that the public will be given access to that property.

At most this argument is a variant of Continental's contention that a public purpose is found when all property is accessible for its fullest use. We are aware that public policy justifications of this nature have sustained takings in other jurisdictions where, for all practical purposes, the sole beneficiary of the condemnation is the party who gains access to his land.[3] Indiana, however, has not departed from its early rejection of that philosophy in the case of *Wild v. Deig* (1873), 43 Ind. 455. There twenty-nine landowners petitioned for a roadway over the land of another. The statute then in effect provided that those seeking the road had to compensate the owner of the land to be condemned, and build and maintain the road themselves. The court found that these requirements clearly distinguished such a road from a public one where the state performed those responsibilities. It held the statute unconstitutional, stating:

"Some of the courts have upheld laws somewhat similar to ours. The reasons given are not uniform. That such ways are branches of the highways and a part of a system, that the power has been exercised and undisputed for a long time, and that the public are interested in securing to every citizen a way to and from his land, are not, in our opinion, sufficient to authorize taking the private property of one and conveying it to another, either with or without compensation." 43 Ind. at 461.

More recent cases have tolerated the grant of eminent domain to a private entity only in limited situations where it is clear that a public purpose will be served. Thus, the state can confer upon a private entity the power of eminent domain if the land to be condemned:

". . . is to be dedicated to a public use and falls within a group of activities historically classified as a public calling or one affected with a public interest. Such businesses, although privately owned, are given the power of eminent domain, with the attendant obligation of serving the public without discrimination, and at a reasonable rate." *Foltz v. City of Indianapolis* (1955), 234 Ind. 656, 130 N.E.2d 650, 654.

While the land to be condemned here would, if it became a public highway, be dedicated to a public use, the condemnor is not an organization affected with a public interest. The court in *Foltz* went on to state at p. 655:

". . . the power of eminent domain cannot be granted to an individual or be exercised by the public corporation if its purpose serves purely a *private or personal use.*"

Here neither appellant's land nor its business are:

". . . dedicated to a public use, open to the public generally, and compelled to serve the public under the classification of a public calling . . . ." *Foltz v. City of Indianapolis*, 130 N.E.2d at 655.

3. As noted in *Fountain Park Co. v. Hensler, supra*, this is most common in western states where roadways and irrigation paths were critical to development. *See Latah County v. Peterson* (1892), 3 Idaho 398, 29 P. 1089. Some state constitutions authorize takings for private use, and state courts have found this is not violative of the 14th Amendment, apparently because a public necessity arises out of the characteristics of the physical resources of the state. *See Tomten v. Thomas* (1951), 125 Mont. 159, 232 P.2d 723, 26 A.L.R.2d 1285.

■ Other cases considering the use of eminent domain where a private entity benefits from but does not directly exercise the power, have noted the public interest characteristics of the entity as well as the public purpose of the taking. *See Hawkins v. City of Greenfield* (1967), 248 Ind. 593, 230 N.E.2d 396 (act authorizing city to issue revenue bonds to purchase property for subsequent leasing to private corporation upheld) and cases cited therein. The primary concern, however, is whether the purpose is public and the motive behind the taking may be examined to see if the proceedings meet this purpose. *Derloshon v. City of Fort Wayne Dept. of Redevelopment* (1968), 250 Ind. 163, 234 N.E.2d 269; *Kessler v. City of Indianapolis* (1927), 199 Ind. 420, 157 N.E.2d 547. The motive in the instant case is evident; the corporation wishes easy access to its land. That is not sufficient to establish a public purpose.

Nonetheless Continental argues that because the deprivation of access resulted from a state undertaking rather than from private actions, a public purpose may be found. It urges on us the analogy of its situation to cases dealing with condemnations undertaken pursuant to limited access highway statutes.

■ It has been established that the state may properly condemn the land of one property owner in order to give access to another whom it has deprived of access through construction of a limited access highway, even though the landlocked parcel appears to be the only beneficiary of the taking. *Andrews v. State* (1967), 248 Ind. 525, 229 N.E.2d 806. Relying on the case of *Luke v. Massachusetts Turnpike Authority* (1958), 337 Mass. 304, 149 N.E.2d 225, the court in *Andrews* concluded that the benefit conferred on the private owner was merely incidental to the larger state undertaking of a public highway even though "in the abstract" no public purpose could be seen in providing access for one property owner. The *Andrews* court also pointed out that providing access to a landlocked parcel effectively reduces the amount of compensation the state would otherwise have to pay to the owner whom it had landlocked. If the state was not allowed to minimize compensatory costs in this fashion, the costs of highway construction ". . . would soar astronomically and Indiana would be dotted abnormally with landlocked real estate." *Andrews v. State, supra,* at 810. *See,* however, *State v. Smith* (1978), Ind. App., 381 N.E.2d 873.

■ Certainly the construction of a dam or ditch, or the straightening of a stream can landlock a parcel as effectively as a limited access highway and the principle of justifying the creation of access on the ground that it is a mere incident of a larger public purpose would seem applicable to the principle behind IC 32-5-3-1.

■ However, we do not believe it can be said that a condemnation undertaken today is incident to state action which occurred nearly a century and a half ago. *See State v. Smith, supra.* Although the state has a duty to compensate those whom it deprives of access, *State v. Jordan* (1966), 247 Ind. 361, 215 N.E.2d 32, that duty runs to the landowner at the time of the taking. It does not proceed to each subsequent owner because the taking occurred only once. Stated differently, the subsequent owner by purchase acquired land without access. As to him there was, therefore, no taking.

■ If the state cannot be compelled to pay compensation to Continental, a private party cannot be compelled to surrender all or part of his land to compensate Continental in the form of access. Intervening years and ownerships have removed the quality of "incident to" from the proposed condemnation, which removes the *Andrews* type of public purpose element as well. The public purpose requirement was not met.

The judgment is therefore affirmed.

HOFFMAN and STATON, JJ., concur.