FARIS MAILING, INC., Petitioner, Taxpayer,

v.

The INDIANA DEPARTMENT OF STATE REVENUE, SALES AND USE TAX DIVISION, and the State of Indiana, Respondent.

No. 49T05–8909–TA–00037.

Tax Court of Indiana.

June 29, 1990.

**714**

Stephen K. Miller, James K. Gilday, Miller, Faires, Hebert, Woddell & Baker, P.C., Indianapolis, for petitioner, taxpayer.

Linley E. Pearson, Atty. Gen. by Lynn A. Francis, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

Faris Mailing, Inc., (Faris) appeals the Indiana Department of Revenue's Letter of Findings denying its claim for a refund. Faris claimed a refund for sales and use tax assessed for the years of 1982 and 1983.[1] This matter is before the Court on the motions for summary judgment filed by each party.

During the assessment period, Faris, an Indiana corporation with its principal place of business located in Marion county, was in the business of processing or preparing items that are to be used for mailing or contained in a mailing for customers. For

the years ending on December 31, 1982 and 1983, Faris filed monthly sales and use tax returns with the Department. In December of 1985, the Department issued two "Notices of Tax Due;" one for unpaid sales and use tax for the year of 1982 in the amount of $3,634.61 and the other for the year of 1983 in the amount of $3,938.25. On September 24, 1986, the Department issued a supplemental audit report, which included, *inter alia*, the form "Adjustments to Sales and Use Tax." This form showed changes to the sales and use tax due in 1982 to $3,537.36 and the sales and use tax due for the year of 1983 to $3,546.23. On October 21, 1986, the Department issued its Letter of Findings denying Faris' protest and issued another "Notice of Tax Due" on November 21, 1986 for the same amount as the Department's previous supplemental audit report. Faris appealed to the Tax Court and filed a petition to enjoin the collection of tax. This Court denied the request for an injunction.[2]

Before the issuance of the Court's Order, the Department issued two additional "Notices of Tax Due" on January 2, 1987. The increased liability represented additional interest that had accrued since the assessment notices were issued on November 21, 1986. The total amount, including penalties and interest, totalled $10,609.23. After the Court denied Faris' request for an injunction, Faris paid the assessment in full and filed a claim for refund. In a letter, the Department denied the claim for refund, stating, "The issue resulting in this claim was addressed in the October 21, 1986 Letter of Findings.... Your protest at that time was denied." The 1986 denial provides:

> The taxpayer protests that the department is barred by the statute of limitations for assessing sales and use tax because the department did not properly notify the taxpayer of a proposed assessment by signing a 'Notice of Tax Due.' The taxpayer claims that a 'Notice of

---

1. The only tax for which Faris claims a refund is the sales and use tax. In its original petition for an injunction, Faris also protested the imposition of gross income tax, but dropped the

appeal because the notices assessing income tax were signed by a designee of the Commissioner.

2. *Faris Mailing, Inc. v. Indiana Dep't of State Revenue* (1987), Ind.Tax, 512 N.E.2d 480.

Tax Due' is not effective during a statutory period of assessment to begin the process of assessment and collection of unpaid tax [because] the 'Notice of Tax Due' is not signed by the Commissioner or a delegated employee of the department.

*Indiana Code* 6–8.1–3–5 provides that all notices, summons, warrants, waivers, demands, or other documents requiring an authorizing signature by the department must be signed by the Commissioner or his designee, and when that document is signed it is an official departmental document. However, this code cite does not define notice, as to include proposed assessments. *Indiana Code* 6–8.1–5–1 provides for authority of the department to send a person notice of the proposed assessment through the United States mail and this section does not require a signature. The taxpayer received an authorized proposed assessment that is valid per *IC* 6–8.1–5–1, and proposed assessments are not included under *IC* 6–8.1–3–5 therefore, the taxpayer's protest is denied.

October, 1986 Letter of Findings at 2 (emphasis in original).

None of the sales and use tax notices received by Faris were signed. The only basis for which Faris protests the imposition of the tax is that the notices were not signed.

## ISSUE

The issue is whether as a matter of law IC 6–8.1–3–5 requires a signature on a 'Notice of Tax Due' and if not, is there a material issue of fact remaining that would preclude the entry of summary judgment. The issue of fact would be whether the Department requires a signature to appear on the notices that were sent to Faris.

## DISCUSSION AND DECISION

Trial Rule 56(C) provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits, ... together with any testimony show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

■ The signature requirement arises from IC 6–8.1–3–5. The interpretation and construction of a statute is a matter of law, subject to a ruling by summary judgment. *See Wechter v. Indiana Dep't of State Revenue* (1989), Ind.Tax, 544 N.E.2d 221, *aff'd,* (1990), 553 N.E.2d 844; *Wilson v. Stanton* (1981), Ind.App., 424 N.E.2d 1042, 1045.

The Petitioner contends that even if the Court finds that IC 6–8.1–3–5 does not impose a signature requirement, the Department, through its practice of signing some notices and not others, has created an issue of fact of whether the Department should have signed the notices sent to Faris. If this fact is material and is in dispute, entry of summary judgment for either party would be precluded.

■ IC 6–8.1–3–5 provides:

All notices, summons, warrants, waivers, demands, or other documents requiring an authorizing signature by the department must be signed by the commissioner or his designee; and when that document is signed it is an official department document.

There are at least two possible interpretations of IC 6–8.1–3–5. First, Faris contends that the legislature intended all notices, *et cetera,* and other documents that require an authorizing signature issued by the Department must be signed by the Commissioner or his designee. This interpretation focuses upon the signature requirement. Second, the Department contends that the legislature intended that those notices, *et cetera,* that require an authorizing signature, must be signed by the Commissioner or his designee and not by another Department employee who is not the Commissioner or his designee. This interpretation focuses upon who is to sign, rather than a mandate to sign. Pursuant to this interpretation, the signature requirement could arise from another stat-

ute, regulation, departmental practice, or from another source.

"The fundamental or cardinal rule in the construction of Indiana statutes is to ascertain the legislative intent." *Wechter*, 544 N.E.2d at 223 (citing *Park 100 Development v. Indiana Dep't of State Revenue* (1981), Ind., 429 N.E.2d 220). A statute which is clear and unambiguous is not subject to judicial construction. *Holland v. King* (1986), Ind.App., 500 N.E.2d 1229, 1233. However, when a statute is ambiguous, or subject to more than one interpretation, the court must look to the rules of statutory construction to ascertain the legislature's intent. *Id.* at 1236. IC 6–8.1–3–5 is ambiguous because it is subject to more than one interpretation.

▉▉▉▉ When construing a statute, the court should interpret the statute to fully affect all of the provisions in the statute to avoid an interpretation that would render any part meaningless. *Foremost Life Ins. Co. v. Department of Ins.* (1980), 274 Ind. 181, 186, 409 N.E.2d 1092, 1096. Also, the court should "endeavor to give [the statute] a practical application, to construe it so as to prevent absurdity, hardship, or injustice, and to favor public convenience." *Baker v. State* (1985), Ind.App., 483 N.E.2d 772, 774 (quoting *Lake County Beverage Co. v. 21st Amendment, Inc.* (1982), Ind. App., 441 N.E.2d 1008, 1014). Likewise, the court must examine the Act as a whole to ascertain the legislature's intent "where adherence to the letter of the law would lead to injustice, absurdity or contradictory provisions." *Park 100 Development v. Indiana Dep't of State Revenue* (1981), Ind., 429 N.E.2d 220, 223.

▉▉▉▉ Faris also cites to the rule that tax statutes should be construed against the state and in favor of the taxpayer. *Id.* at 222; *Estate of Eberbach v. Indiana Dep't of State Revenue* (1987), Ind.Tax, 512 N.E.2d 902, *aff'd*, (1989), Ind., 535 N.E.2d 1194. The Department contends that this rule of statutory construction is inapplicable to the present statute because IC 6–8.1–3–5 is not a tax imposing statute, but an administrative statute which provides a procedure for the Department to follow.

The general rule is that "tax laws in general are strictly construed against the State" unless an exemption statute is being interpreted. *Department of Revenue v. Bethel Sanitarium, Inc.* (1975), 165 Ind.App. 421, 424, 332 N.E.2d 808, 810–11. This general rule is most often cited when the interpretation of a "tax imposing" statute or an exemption statute is questioned. However, the Court recognizes that IC 6–8.1–3–5 is a tax law, in general, pursuant to the *Bethel* decision. Yet, as the court held in *Park 100*, 429 N.E.2d at 222, this rule "must be applied in conjunction with the basic principle that all statutes should be read where possible to give effect to the intent of the legislature."

This is not the first occasion on which the Court has considered the meaning of IC 6–8.1–3–5. In *Faris Mailing, Inc. v. Indiana Department of State Revenue* (1987), Ind.Tax, 512 N.E.2d 480, 484–85, upon Faris' request for an injunction, in the Order on the motion to reconsider, this Court held that Faris did not have a reasonable opportunity to prevail on the merits because IC 6–8.1–3–5 requires that "those notices, in which an authorizing signature is required, must be signed by the Commissioner or his designee." *Id.* at 485. The Court relied upon the rule of statutory construction which states that rules of grammar can be used to construe an ambiguous statute. *Id.* According to the rule of grammar relied upon by the Court, "[a] clause or phrase is considered restrictive if its removal from the sentence would alter the meaning of the main clause." *Id.* (quoting *Webster's Standard American Style Manual* 14 (Merriam Webster 1985)).

The ramification of being restrictive is that the phrase restricts the meaning of the words preceding it. *Martha Kolln, A Handbook and Rhetoric Language and Composition* 68–70 (1984). Participial phrases that are restrictive and restrict the noun preceding them are *not* set apart by commas. *Id.* at 68. The commas appearing in IC 6–8.1–3–5 merely separate nouns appearing in a series.

Pursuant to this interpretation, IC 6–8.1–3–5 should be read in the following man-

ner: "All notices requiring an authorizing signature must be signed by the Commissioner ...," or "All summons requiring an authorizing signature must be signed by the Commissioner ...," or "All other documents requiring an authorizing signature must be signed by the Commissioner ...," and so on.

This Court previously held, "[p]etitioner's interpretation would have that phrase [requiring an authorizing signature] be a nonrestrictive phrase, or parenthetical expression which, if it were such, would be enclosed between commas." *Faris,* 512 N.E.2d at 485. If the legislature had intended the phrase to be nonrestrictive, it would have placed a comma after the word "documents." It did not. A nonrestrictive phrase would not restrict the preceding series, but would only be commenting on the preceding phrase. *Kolln, supra,* at 68. The phrase could be removed and the sentence's meaning would be unchanged. None of these descriptions can logically apply to the phrase "requiring an authorizing signature." The phrase does change the meaning of the sentence, and it is not merely commenting on the preceding series of words. Although not bound by this prior interpretation, the Court finds its analysis still sound.

There are additional rules of statutory construction that support the Court's previous interpretation of IC 6–8.1–3–5, as well. One such rule provides:

[A] statutory amendment changing a prior statute indicates a legislative intention that the meaning of the prior statute has been changed. This raises a presumption that the legislature intended to change the law unless it clearly appears that the amendment was made only to express the original intention of the legislature more clearly.

*Indiana Alcoholic Beverage Comm. v. Osco Drug, Inc.* (1982), Ind.App., 431 N.E.2d 823, 833.

In its previous form, IC 6–8.1–3–5 provided in pertinent part:

6–2–1–33 [64–2628]. Administration of act—Director, deputies and other employees—Written instruments—Executions—Violations—Prosecution.

. . . .

(d) All notices, summons, warrants, waivers, demands, and other written documents except as otherwise provided in section 29 [repealed], shall be signed by him, or his chief deputy, and when so signed shall be regarded as the official acts of the department.

IC 6–2–1–33.

The Indiana General Assembly recodified Section 29a into 6–2–1–34 which provided, in part, that the Department could "promulgate rules and regulations not inconsistent with this chapter, for making returns and for the ascertainment, assessment and collection of the tax imposed hereunder as he may deem necessary and desirable." IC 6–2–1–33 was not an ambiguous statute, the meaning was clear. All notices, *et cetera,* were to be signed by the Commissioner, unless, under Section 29a (recodified into IC 6–2–1–34), the rules provided otherwise. When the legislature enacted IC 6–8.1–3–5, it replaced the words "and other written documents except as otherwise provided in section 29 shall be signed" with the words "or other documents requiring an authorizing signature by the department must be signed."

Pursuant to IC 6–2–1–33, everything listed in the series had to be signed, unless the rules provided otherwise pursuant to section 29. The onus was upon the Department to prove that a document was not required to be signed. But, under IC 6–8.-1–3–5, the presumption is that the document need not be signed unless the Department requires it. The burden is now on the Department to require a signature to appear on the document.

When IC 6–2–1–33 was recodified and amended into IC 6–8.1–3–5, the language of the statute clearly changed, and Faris has not overcome the presumption that the legislature intended to change the meaning of the statute when it altered the wording, despite the attempted submission of the affidavit of Jerome J. Reppa, a Representative in the Indiana House of Representatives in 1980.

Before the hearing on the Parties' cross motions for summary judgment, Faris submitted an affidavit from Representative Reppa. During the hearing, the Department moved to strike the affidavit. The Court granted the motion. The Court did not find the "intent of the General Assembly ten years ago, without a basis of legislative history or testimony and other documents" helpful in determining the intent of the legislature when it passed IC 6–8.1–3–5. (R. 10). The Court stated that it could not consider legislative intent, or motives other than as represented in the final statute. Faris has since filed a "Motion to Reconsider the Striking of the Affidavit of Representative Jerome J. Reppa."

■ In reconsidering the ruling on the motion to strike, the Court recognizes that testimony from a person who helped to draft a bill "may be relevant and useful in determining legislative purpose in a case such as this, however, it does not bind the court." *Indiana Aeronautics Comm. v. Ambassadair, Inc.* (1977), 267 Ind. 137, 144, 368 N.E.2d 1340, 1344, *cert. denied*, (1978), 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403. In *Ambassadair*, the issue before the court was whether a statute was constitutional. The court held, "Even in the face of such testimony [from the drafter], a court must go ahead and make an independent determination of whether any reasonably conceivable purpose exists which would support the constitutionality of the classification employed." *Id.* at 144, 368 N.E.2d at 1344. Similarly in *Continental Enterprises, Inc. v. Cain* (1979), 180 Ind.App. 106, 110, 387 N.E.2d 86, 89, the court held that "the motives of the sponsors [of legislation] cannot be imputed to the Legislature unless there is a basis for it in its statutory expression." This basis would appear if the sponsor's assertions actually appeared in the final statute. Another early Indiana Court held that the allegations concerning the motives of the Legislature in the enactment did not aid the court in determining whether the statute was unconstitutional. *Parker v. State* (1892), 132 Ind. 419, 422, 31 N.E. 1114, 1115.

Representative Reppa was a sponsor as an official author of IC 6–8.1–3–5. In paragraphs 7 and 8 of the affidavit, he stated that he understood and that it was his belief that the purpose of IC 6–8.1–3–5 was to update IC 6–2–1–33.

If the Court overruled its previous ruling, the affidavit would be submitted by the non-moving party (Faris is the non-moving party as to the Department's motion for summary judgment), and "all doubts must be resolved against the moving party and facts set forth by the party opposing the motion must be accepted as true," when determining whether a genuine issue of material fact precludes summary judgment. *Progressive Constr. and Eng'g Co. v. Indiana and Mich. Elec. Co.* (1989), Ind.App., 533 N.E.2d 1279, 1284. However, the affidavit does not set forth any material facts, but purports to inform the Court of the legislature's intent in passing IC 6–8.1–3–5. Furthermore, even when the affidavit is accepted as true, the Court is still not aided in the construction of IC 6–8.1–3–5. By stating that Reppa, as the sponsor, believed or understood this, does not mean that the rest of the legislature believed or understood that IC 6–8.1–3–5 merely updated IC 6–2–1–33.

As the court stated in *Continental*, 180 Ind.App. at 110, 387 N.E.2d at 89, "the motives of the sponsors [of legislation] cannot be imputed to the Legislature unless there is a basis for it in its statutory expression." Because Mr. Reppa's beliefs or understandings, as sponsor, cannot be imputed to the legislature, the affidavit is immaterial and impertinent because it does not assist Faris in its cause of action or defense. *See Finney v. L.S. Ayres* (1965), 137 Ind.App. 430, 434, 207 N.E.2d 642, 643. The remaining paragraphs of the affidavit are either redundant or immaterial. Therefore the Court reaffirms its previous ruling striking the affidavit of Representative Reppa. Clearly, the legislature needed to update IC 6–2–1–33, since it referred to a section that had since been repealed. However, when passing IC 6–8.1–3–5, the legislature not only updated IC 6–2–1–33, it also changed the meaning.

■ Faris also asserts that even if IC 6–8.1–3–5 does not require the Commissioner to sign all notices, the Department's practice of signing notices that stem from a manual assessment and not signing notices generated by computer creates an issue of fact of whether the Department has created a requirement that the Commissioner sign the notices sent to Faris. "A fact is material for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiffs' cause of action." *Cowe By Cowe v. Forum Group, Inc.* (1989), Ind.App., 541 N.E.2d 962, 965.

If the Department had a practice of signing notices of the type sent to Faris, then there is a possibility that it had established a departmental practice or requirement that the Commissioner's or his designee's signature was required on the notices sent to Faris, pursuant to IC 6–8.1–3–5.

A factual issue is 'genuine' if it is not capable of being conclusively foreclosed by reference to undisputed facts. Consequently, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the litigation.

*Murphy v. Mellon Accountants Professional Corp.* (1989), Ind.App., 538 N.E.2d 968, 969.

There are two ways that this fact could be at issue. First, if the Department had a practice of signing the notices of the type that were sent to Faris, an issue of fact remains of whether the Commissioner or his designee should have signed the notices sent to Faris. This fact was clearly established at the hearing on summary judgment. The Department's practice is to sign notices that it generates manually (about one hundred and fifty (150) to two hundred (200) per year) and not to sign notices that it generates by computer (about seventeen thousand (17,000) per week, which excludes income and special tax notices). (R. 32–37). The notices sent to Faris were generated by the computer. Therefore, the Department does not have a practice of signing the notices of the type that it sent to Faris.

Second, if the Department should have sent a manually generated notice to Faris, then an issue of fact is created whether the Commissioner or his designee should have signed the notice. Again, this fact was clearly established at the hearing on the motions for summary judgment. For the reasons of timeliness, lack of information, or the inability to complete a project correctly, a signed manual notice will be sent to the taxpayer. Apparently, the practice of signing manually generated notices stems from the presence of a signature block on the manually created notices. On the computer generated notices there is no signature block. Robert Romack, Deputy Administrator of Tax Policy and Appeals Division of the Indiana Department of State Revenue, testified:

There are at least five situations where billings would be generated manually; for instance, if the statute of limitations for assessment under Indiana Code 6–8.1–5–1 was about to expire, the Department would be required to issue a notice of proposed assessment, a CS–80 notice of tax due, manually.

If the Department would issue a jeopardy assessment, by its very nature those notices have to be issued almost immediately and the Department is not able to do that through the normal process of computer-generated notices.

If a taxpayer would request the Department to issue a notice of proposed assessment immediately, then the Department would issue such assessment, such notice manually. For example, if the taxpayer wants to deduct the interest in a particular tax year, if he agrees that the base tax was actually owed and wanted to deduct the interest associated with that base tax in a particular taxable year, then the Department would issue a notice manually and afford the taxpayer the opportunity to deduct that interest in that tax year.

If a taxpayer does not have a federal identification number or a registered retail merchants certificate, then a notice of tax due or notice of proposed assessment cannot be generated by the computer, so those notices would have to be

generated manually, and those are normally in situations that involve some type of criminal investigation.

The final situation would be if a taxpayer had made multiple partial payments, then the Department would be required to issue billing manually because the computer is not able to accept more than one payment. If the Department tried to process those multiple payments, the taxpayer would not be given full credit for those payments and interest would not be calculated properly.

(R. 33–35).

From the facts presented, the notices sent to Faris do not fall within any of these categories. Although Mr. Romack's use of the terms "at least five instances" suggests that there are other situations that a manual notice with the Commissioner's or designee's signature should be used, clearly the notices sent to Faris were typical and standard "Notices of Tax Due." There were no special time limitations, nor was there a "lack of information," or an "inability to complete the project;" circumstances that would prompt a notice to be generated manually and signed.

The Department's practice of signing manually generated notices does not create an issue of fact of whether the Department also has a practice of signing computer generated notices, and there are no facts that would suggest that the Department should have sent Faris a manually generated notice, as opposed to the computer generated notice that it sent and that Faris received. Faris asserts that because it received a "Notice of Proposed Assessment" concerning the income tax assessment that the Deputy Commissioner [3] signed, an issue of fact is created whether the Department should have also signed the notices of sales and use tax due. The notices of income tax assessment were not printed on the same form as the notices of the sales tax. The

notice concerning the income tax had a signature block at the bottom of the form and was apparently generated manually instead of by computer. Why this notice was generated manually and not by computer is not the focus of this appeal. The Department clearly did not have a practice of signing the computer generated sales and use tax notices that were sent to Faris.

Finally, under IC 6–8.1–5–1, when tax is alleged to be due, the Department must send the taxpayer notice; however, IC 6–8.-1–5–1 does not impose any requirement on the Department to sign such notice.

The Court finds that the legislature's intent in enacting IC 6–8.1–3–5 was not to impose a requirement that all notices be signed. The legislature's intent was to provide who should sign those notices that require a signature by the Department. The Court further finds that the Department has not established a requirement that the notices of the type sent to Faris should be signed.

The Court finds that the Petitioner's "Motion to Reconsider the Striking of the Affidavit of Representative Jerome J. Reppa" should be and the same is overruled and denied.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that there are no issues of material fact remaining in dispute and that summary judgment is entered in favor of the Department and the imposition of sales and use tax for the years of 1982 and 1983 is valid and enforceable.

---

**3.** As stated in footnote 1, in its original appeal, Faris contested the corporate income tax. However, Faris agreed to pay the tax and not seek a refund after receiving "Notices of Tax Due" that were signed by the Deputy Commissioner.