624 S.E.2d 468

**WEST VIRGINIA DEPARTMENT OF TRANSPORTATION, Division of Highways, a West Virginia Corporation, and Fred Vankirk, Acting West Virginia Commissioner of Highways, Plaintiffs Below, Appellees,**

v.

**DODSON MOBILE HOMES SALES AND SERVICES, INC., a West Virginia Corporation, Defendant Below, Appellant.**

No. 32558.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 5, 2005.

Decided Nov. 17, 2005.

Timothy M. Sirk, Keyser, for the Appellees.

Wm. Richard McCune, Jr., Wm. Richard McCune, Jr., P.L.L.C., Martinsburg, for the Appellant.

ALBRIGHT, Chief Justice:

The defendant below, Dodson Mobile Homes Sales and Services, Inc. (hereinafter referred to as "Appellant"), appeals the denial by the Circuit Court of Berkeley County of an award of attorneys' fees in the context of an eminent domain action pursuant to provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs Act (hereinafter referred to as "Property Acquisition Act" or "Act"), 42 U.S.C. §§ 4601—4655 (2000). Appellees, the Department of Transportation, Division of Highways, and Fred VanKirk in his capacity as Commissioner of Highways[1] (hereinafter referred to as "State" or "State agency"), essentially contend that the lower court correctly denied the request for attorneys' fees because the statutory authority for making such award extends only to situations where a State agency has not initiated condemnation proceedings and has specifically found that the property taken was an uneconomic remnant. After careful consideration of the briefs of the parties, oral arguments, the record certified to this court and applicable

law, we find the denial of attorneys' fees to be in error and so reverse the ruling of the court below.

## I. Factual and Procedural Background

The attorneys' fee issue surfaced in an eminent domain proceeding filed by the State on August 21, 1995, for the purpose of determining just compensation for the acquisition and/or damage to the residue of Appellant's property due to a highway improvement project involving the relocation of West Virginia Route 9 in Berkeley County, West Virginia. Appellant is a corporation engaged in the business of selling furniture and mobile homes on the property in question. The improvements to Route 9 resulted in the construction of a road through the middle of what was originally one piece of land measuring 4.3 acres. Consequently, the single piece of property became two tracts of unequal size located on either side of the new highway. One tract was large enough to continue to accommodate the furniture store and the mobile homes sales business and the remaining tract was a .73 acre triangle-shaped parcel located across the road from these establishments. Appellant maintains that no use could be made of the smaller tract in connection with the furniture and mobile homes businesses.

During the course of the eminent domain proceedings, Appellant filed a motion seeking leave to file an amended answer so as to raise a counterclaim for inverse condemnation.[2] In the proposed amended answer, Appellant alleged that the .73 acre tract was an uneconomic remnant[3] and sought a writ of mandamus to require the State to purchase the remnant. The court below permitted the requested amendment, and the case was

1. Paul A. Mattox was subsequently named to the position of Commissioner of the Division of Highways.

2. The United States Supreme Court drew the following distinction between "inverse condemnation" and condemnation proceedings in *U.S. v. Clarke*, 445 U.S. 253, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980).
   [A] landowner's action to recover just compensation for a taking by physical intrusion has come to be referred to as "inverse" or "reverse" condemnation .... [A] "condemnation" proceeding is commonly understood to be an

action brought *by* a condemning authority such as the Government in the exercise of its power of eminent domain.
*Id.* at 255, 100 S.Ct. at 1129.

3. As defined by the Property Acquisition Act, which is applicable to the states when federal money is used in highway projects, "an uneconomic remnant is a parcel of real property in which the owner is left with an interest after the [government's] partial acquisition ... [but which] has little or no value or utility to the owner." 42 U.S.C. § 4651(9) (2000).

tried to a jury in December 2003. The verdict form submitted to the jury contained special interrogatories, which the State did not challenge, about the .73 acre parcel. The interrogatories posed to and answered by the jury follow:[4]

> **Special Interrogatory 1**: Is the .73 acre tract an uneconomic remnant?
>
> Jury answered "Yes."
>
> **Special Interrogatory 2**: If you have answered "Yes" to Special Interrogatory 1 above, state the sum that the State is to pay to Dodson Mobile Home Sales and Service, Inc. for the purchase of the .73 acre parcel.
>
> Jury answered "$73,000."

As a direct result of these specific jury findings, the court below ordered the State to purchase the uneconomic remnant from Appellant for $73,000.[5] Subsequent to the verdict and entry of judgment, Appellant brought a motion seeking award of attorneys' fees as permitted by the federal regulations promulgated under authority of the Property Acquisition Act. The court below denied Appellant's motion by order dated April 15, 2004. In a further effort to obtain the award of attorneys' fees, Appellant filed a motion to alter or amend judgment pursuant to Rule 59 of the West Virginia Rules of Civil Procedure. This motion was likewise denied by order dated July 14, 2004. The denial of the requested attorneys' fees is the basis for the instant appeal.

## II. Standard of Review

■ The primary issue presented in this appeal of the judgment centers on the lower court's interpretation of a statute and related federal regulation. In instances "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). *See also* Syl. Pt. 1, *Appa-*

*lachian Power Co. v. State Tax Dept. of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.") A de novo standard also governs our review of the lower court's treatment of the motion to alter or amend its judgment because

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W.Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. American Travellers Life Ins.*, 204 W.Va. 430, 513 S.E.2d 657 (1998).

## III. Discussion

■ Appellant maintains that an award of attorneys' fees was appropriate in this case because the provisions of the Property Acquisition Act expressly provide for attorneys' fees to be awarded when the owner of property prevails in an inverse condemnation proceeding. The State contends that the lower court correctly reasoned that the attorneys' fee provision of the Property Acquisition Act is inapplicable because Appellant had not been forced to initiate the suit involving the property and only raised the inverse condemnation matter by means of a counterclaim. The State goes on to say that it had no statutory obligation to acquire the severed .73 acre tract because the Act only imposes the requirement to purchase such tracts when the head of the State agency makes the preliminary finding that a severed portion of property is an uneconomic remnant. The head of the State agency made no such finding in this case. To better understand the arguments, we look to the text of the Act and relevant federal regulations.

The Property Acquisition Act applies to federal and federally assisted road construc-

---

4. A third special interrogatory was presented to the jury in the event that the first interrogatory was answered in the negative. The alternative interrogatory stated:

> **Special Interrogatory 3**: If you answered "No" to Special Interrogatory 1 above, state those damages, if any, which you find that the State is to pay to Dodson Mobile Homes Sales and Services, Inc. for damage to the .73 acre parcel.

5. The entire verdict in the case amounted to an award of $201,800 in Appellant's favor.

tion projects. As a condition of receiving federal assistance for a project resulting in the acquisition of real property, a State agency must agree to comply with the terms of the Act. *See* 42 U.S.C. § 4655; W.Va.Code §§ 54-3-1 to -5 (Repl.Vol.2000) (implementing the federal Act). The general purpose of the federal Act is "to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices. . . ." 42 U.S.C. § 4651. The Act directs agencies to abide by delineated policies, two of which bear particular relevance to the matter before us and read as follows:

(8) If any interest in real property is to be acquired by exercise of the power of eminent domain, the head of the Federal agency concerned shall institute formal condemnation proceedings. No Federal agency head shall intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property.

(9) If the acquisition of only a portion of a property would leave the owner with an uneconomic remnant, the head of the Federal agency concerned shall offer to acquire that remnant. For the purposes of this chapter, an uneconomic remnant is a parcel of real property in which the owner is left with an interest after the partial acquisition of the owner's property and which the head of the Federal agency concerned has determined has little or no value or utility to the owner.

*Id.* These policies have been incorporated in the objectives set forth in the federal regulations promulgated to implement the Act. *See* 49 C.F.R. § 24.1 (1989). The import of these various statutory and regulatory provisions is that they apply equally to state agencies carrying out responsibilities detailed in the federal law.

The Act further provides for award of specific litigation expenses in certain limited circumstances. 42 U.S.C. § 4654. The type of expenses and the circumstances in which the award may be made are detailed in the regulations in the following manner:

The owner of the real property shall be reimbursed for any reasonable expenses, including reasonable attorney, appraisal, and engineering fees, which the owner actually incurred because of a condemnation proceeding, if:

(a) The final judgment of the court is that the Agency cannot acquire the real property by condemnation; or

(b) The condemnation proceeding is abandoned by the Agency other than under an agreed-upon settlement; or

(c) The court having jurisdiction renders a judgment in favor of the owner in an inverse condemnation proceeding or the Agency effects a settlement of such proceeding.

49 C.F.R. § 24.107.

█ Responding to the apparent ambiguity in these provisions of federal law, the lower court, through its April 15, 2004, and July 14, 2004, orders, concluded that the court was without authority to award attorneys' fees pursuant to the Act.[6] The lower court found that the federal provisions only required an award of actual attorneys' and other specified fees directly related to an inverse condemnation action when a property owner is forced to initiate the inverse condemnation claim against the State in order to obtain compensation for the owner's property which the State has taken for a public purpose. We believe this interpretation of the applicable law—in effect requiring the landowner to initiate a second action rather than raise a counterclaim—severely discounts the intent of Congress in enacting this legislation, and instead serves to elevate form over substance to reach a preferred outcome. We perceive the intent of Congress to be that a landowner not be required to pay fees for attorney services and other litigation ex-

---

**6.** *See Sally–Mike Props. v. Yokum,* 179 W.Va. 48, 50–51, 365 S.E.2d 246, 248–49 (1986) (each party is responsible for its own litigation costs unless there is a showing of bad faith or authority to

award attorneys' fees is expressly provided by rule of court, statutory grant or contractual provision).

penses when the landowner, and not the government, has initiated a claim for just compensation and has successfully prosecuted that claim to judgment. That is what happened here.

We note that "[j]udicial interpretation of a statute is warranted only if the statute is ambiguous...." Syl. Pt. 1, in part, *Ohio County Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983). The statutes and regulations before us are ambiguous in that they are "susceptible of two or more constructions or [are] of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to ... [their] meaning." *Hereford v. Meek*, 132 W.Va. 373, 386, 52 S.E.2d 740, 747 (1949). In order to resolve such ambiguity we are ever mindful that our "primary object in construing a statute is to ascertain and give effect to the intent of the ... [legislating body]". Syl. Pt. 1, in part, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975).

The general intent of Congress in enacting this federal legislation is embodied in the purpose statement of the Act itself: "[T]o encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in [ ] land acquisition practices." 42 U.S.C. § 4651. It clearly has broader implications than just encouraging a government entity to take the first step in determining just compensation for a taking of property by initiating condemnation proceedings. The State has maintained that because it initiated the eminent domain proceeding in order to compensate Appellant for damage to its property that Appellant had no reason to file an inverse condemnation counterclaim in this case. However, Appellant's purpose in filing the counterclaim was not merely to seek compensatory damages but to compel the purchase of the uneconomic remnant which was of "little or no value or utility" to Appellant as

the owner of the property, for which the State had not offered *any* compensation at all. 42 U.S.C. § 4651. It is clear from the testimony of the State's appraiser that no inquiry was made of the landowner about the former or future uses of the .73 acre tract to determine whether it had any continued value or utility to the business. Additionally, the appraiser said that she did not separately evaluate the amount of damage which was caused to the .73 acre parcel due to its severance from the main property by the new road because at the time she examined the smaller tract it was not being used. If Appellant had not raised the counterclaim regarding purchase of the .73 acre tract as an uneconomic remnant, the only way Appellant could have sought to be relieved of the continuing tax burden of the unusable land was to petition the circuit court in a separate proceeding for a writ of mandamus to compel the State to take action.[7] While the use of a counterclaim to reach the question of compensation for the .73 acre tract may be unusual, we see no defensible reason to require the initiation of a second suit by a landowner in light of the clear Congressional intent "to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in [ ] land acquisition practices." 42 U.S.C. § 4651. Additionally, the regulations governing award of attorneys' and other enumerated fees make no distinction with the method by which a party raises inverse condemnation.

The regulations unambiguously direct that attorneys' fees are to be awarded when a landowner prevails in an inverse condemnation proceeding. 49 C.F.R. § 24.107(c). There is no question that Appellant prevailed on the inverse condemnation counterclaim in a court having jurisdiction and, therefore, qualifies for reimbursement "for any reasonable expenses, including reasonable attorney, appraisal, and engineering fees ... actually incurred" in prosecuting the inverse condemnation matter. 49 C.F.R. § 24.107. Accordingly, we hold that pursuant to the provisions

---

7. *See e.g.* Syl. Pt. 1, *State ex rel. Rhodes v. West Virginia Dept. of Highways*, 155 W.Va. 735, 187 S.E.2d 218 (1972).

of the Uniform Relocation Assistance and Real Property Acquisition Policies for Federal and Federally Assisted Programs Property Acquisition Act, the event triggering the award of attorneys' fees in a proceeding involving inverse condemnation, as set forth in Title 49, Section 24.107 of the Code of Federal Regulations, is when "[t]he court having jurisdiction renders a judgment in favor of the owner." 49 C.F.R. § 24.107(c). For the reasons assigned, we reverse the orders of the lower court which served to deny award of applicable attorneys' fees.

The lower court's orders conveyed concern that allowing the award of attorneys' fees under the circumstances of this case would set a precedent which would unduly encourage "future Defendants in condemnation proceedings ... [to] file inverse condemnation counterclaims to ... [obtain an] award of attorney's fees." Indeed, the State forcefully argued before this Court that allowing attorneys' fees when a property owner raises an inverse condemnation counterclaim in a condemnation proceeding would deplete the highway fund. We fully appreciate this concern. However, we suspect the circumstances of this case are unlikely to arise frequently in the future. In similar cases, it may reasonably be expected that the landowner would be fully compensated by payment for damages to the residue or the State highway officials will carefully consider the economic value of a fully severed remnant of land before ever initiating a condemnation proceeding. That did not happen here and the landowner was compelled to act to recover the value of an unusable remnant of its land. We believe we are bound by the expressed intent of Congress to allow the award of attorneys' and other defined fees actually incurred in the inverse condemnation proceeding.

■ As previously noted, the award of fees is not without limitation. The award is restricted to reimbursement of reasonable attorney, appraisal and engineering fees actually incurred because of the inverse condemnation proceeding. *See* 42 U.S.C. § 4654; 49 C.F.R. § 24.107. The lower court on remand should proceed to determine what award is reasonable under the circumstances of this case and its appeal.

## IV. Conclusion

Based on the foregoing, the denial of an award of reasonable fees actually incurred for prosecuting an inverse condemnation counterclaim by the Circuit Court of Berkeley County is reversed, and the case is remanded for determination of the amount of the award in keeping with the restrictions defined in applicable federal law.

Reversed and remanded.

Chief Justice ALBRIGHT delivered the Opinion of the Court.