**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2019 Term**

_____

**No. 18-0226**

_____

**FILED**

**April 12, 2019**

**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WEST VIRGINIA DEPARTMENT OF TRANSPORTATION,
DIVISION OF HIGHWAYS, AND
BYRD WHITE, INTERIM SECRETARY/COMMISSIONER,**
Petitioners Below, Petitioners

**V.**

**VICTOR MORTON ECHOLS, REGINA LOUISE SMITH, RAMONA GAIL
ELLISON, AND VERONICA JANE DELBRUGGE,**
Defendants Below, Respondents

_____

Certified Questions from the Circuit Court of Grant County
The Honorable James W. Courrier, Jr., Judge
Case No. 10-C-14

**CERTIFIED QUESTIONS ANSWERED**

_____

Submitted: January 9, 2019
Filed: April 12, 2019

Leah R. Chappell
Adams, Fisher & Chappell, PLLC
Ripley, West Virginia
Anthony W. Rogers
Kirkwood & Rogers PA Inc.
Keyser, West Virginia
Attorneys for the Petitioners

Duke A. McDaniel
Petersburg, West Virginia
Attorney for the Respondents

**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project that is subject to the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601 *et seq.*, the question of whether the residue has become an "uneconomic remnant" is a question to be determined exclusively by the Commissioner of Highways.

2.      One whose real estate is taken for public use is entitled to just compensation for the value of the land taken at the time of taking, and to damages to the residue.

3.      When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project, and when, as a result of the project, the residue is rendered landlocked by the destruction of the preexisting public road access, the Division of Highways may, without the landowner's consent, mitigate the damage to the residue by ensuring that the work performed by the Division of Highways is completed or revised in a manner that assures reasonable public road access thereto. The Division of Highways must commit to ensure access by more than a mere promissory statement or

i

declaration. Instead, the Division of Highways must protect the rights of the parties concerned by obligating itself to provide public road access by amending its condemnation petition, filing a new petition, or by some form of binding stipulation that is definite and certain in its terms.

4. When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project, and when, as a result of the project, a residue tract that is not needed by the State for public road purposes has been rendered landlocked, the trial court cannot require the Division of Highways to acquire the landlocked residue by condemnation.

**Jenkins, Justice:**

The instant matter is before this Court upon questions certified by the Circuit Court of Grant County arising from a condemnation proceeding initiated by the West Virginia Department of Transportation, Division of Highways, a respondent herein, in relation to a federally-funded highway construction project that resulted in residue property being rendered landlocked. After exercising our authority to reformulate the questions certified, and after considering the parties' briefs, relevant portions of the appendix record, oral arguments, and the pertinent law, we answer the reformulated certified questions as follows:

> 1. When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project that is subject to the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601 *et seq.*, and when, as a result of the project, a residue tract has been rendered landlocked, is the question of whether the residue has become an "uneconomic remnant" a question of fact to be determined by a jury? Answer: No.
>
> 2. When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project, and when, as a result of the project, the residue is rendered landlocked by the destruction of the preexisting public road access, may the Division of Highways, over the objection of the landowner, mitigate the damage to the residue by restoring reasonable public road access thereto? Answer: Yes.
>
> 3. When the West Virginia Department of Transportation, Division of Highways, initiates a

1

condemnation proceeding that involves a partial taking of land in connection with a highway construction project, and when, as a result of the project, a residue tract that is not needed by the State for public road purposes has been rendered landlocked, can the trial court require the Division of Highways to acquire the landlocked residue by condemnation? Answer: No.

# I.

## FACTUAL AND PROCEDURAL HISTORY

This proceeding arises from a dispute involving the construction of Corridor H, which is a federally-funded project. Respondents, Victor Morton Echols, Regina Louise Smith, Ramona Gail Ellison, and Veronica Jane Delbrugge (collectively "Property Owners"), own a tract of land along the route of Corridor H in Grant County. In furtherance of the construction of Corridor H, a federally-funded highway project subject to the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601 *et seq.*, the Petitioners, the West Virginia Department of Transportation, Division of Highways, and Byrd White, Interim Secretary/Commissioner[1] (collectively "the DOH"),

---

[1] Thomas J. Smith, in his capacity as the Secretary/Commissioner of the West Virginia Department of Transportation, Division of Highways ("the DOH"), was originally named as a defendant in this action. However, during the pendency of the instant proceeding, Byrd White was appointed as the Interim Secretary/Commissioner of the DOH. Accordingly, pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, Byrd White, in his official capacity as Interim Secretary/Commissioner of the DOH, has been substituted as a party in this appeal.

condemned a 58.70 acre portion of Property Owners' land.[2] Property Owners' residue, the land that was not condemned by the DOH, was divided by Corridor H into two parts. One tract of approximately 18.81 acres is located south of Corridor H. The other tract exceeds 120 acres[3] and is located to the north of Corridor H ("the northern tract").

The dispute underlying this proceeding arose after the DOH filed its petition to condemn a portion of Property Owners' land in February 2010. The circuit court entered its "ORDER FILING THE PETITION" in March 2010, and thereby granted the DOH the right to condemn the real estate and begin construction of the Corridor H project. Shortly thereafter, the DOH deposited into the circuit court's receivership account an amount equal to its estimate of just compensation for the condemned property, which was $334,400. Once the date of take was established, the DOH revised its estimate and deposited an additional $21,300. Another order entered by the circuit court in March 2010 directed that the condemnation proceeding would be delayed until construction on the subject property was complete, which completion occurred in 2014.

---

[2] 52.58 acres of this land was in permanent takes, 2.73 acres was for permanent drainage easements, and 3.39 acres was for temporary construction easements.

[3] The parties dispute the exact acreage of the northern tract, but that dispute need not be resolved to answer the instant certified questions.

3

As a result of the construction of Corridor H, the northern tract of Property Owners' land was rendered landlocked.[4] The DOH's appraiser valued the northern tract at $2,100 per acre, for a total of $261,093.[5] Property Owners' appraiser valued the northern tract at $3,500 per acre, for a total of $449,190.[6] The DOH proposed to construct an access road to Property Owners' northern tract at an estimated cost of $100,000.[7] Property Owners opposed the proposal claiming that the area where the access road would be located is very steep and is "in a slide area;" thus, they contend, maintaining a road in that area would be unreasonably costly. As a result, Property Owners filed, in the condemnation proceeding before the circuit court, their amended motion for leave to file an answer and counterclaim. Property Owners sought to compel the DOH to condemn the landlocked northern tract as an "uneconomic remnant" pursuant to 42 U.S.C. § 4651(9) (2012). The

---

[4] The term "landlocked" refers to the land being without any legally enforceable access to a public road. *See* Black's Law Dictionary 883 (7th ed. 1999) (defining landlocked as "[s]urrounded by land, often with the suggestion that there is little or no way to get in or out without crossing the land of another").

[5] The DOH appraisal is based upon 124.33 acres. *See* note 3, *supra*.

[6] Property Owners' appraisal is based upon 128.34 acres. *See supra* note 3.

[7] According to the DOH, the details of the proposed alternative access were not developed in the circuit court. For example, the DOH avers that the proposal did not specify whether any additional land would need to be acquired from the Property Owners for construction purposes. Because it is unclear at this point whether DOH will seek to condemn any additional property in order to construct the access road, there is no issue pertaining to public use presently before this Court and our opinion should not be construed as implicitly addressing this issue.

4

DOH filed its response essentially asserting, in part, that it could not be compelled to purchase the northern tract as an "uneconomic remnant."

The circuit court, by order entered August 26, 2016, concluded that the Property Owners would be permitted to present their claims to the jury. In so ruling, the circuit court reasoned that,

> [i]n every condemnation case, there is always a two-step determination on damages. First is a determination of the fair market value of the land actually taken. Second is a determination of the damages, if any, to any remainder property of the landowner. In the second determination, if the remainder property is rendered . . . damaged to the extent that it has no reasonable value to the landowners, and is thus an uneconomic remnant, then that remainder must be purchased for fair market value by the condemning entity. Both of these determinations are questions for the jury.

> Therefore, the Court FINDS that the issues of whether any remaining tracts are uneconomic remnants which must be purchased by the DOH or, in the alternative, whether any remaining tracts have been damaged, but still retain some value, are properly before the Court for consideration by the jury. The [Property Owners] are free to present evidence that the remainder has no reasonable value and that the DOH must purchase the tract(s) for fair market value. Likewise, the DOH can offer evidence that the property retains value and that it should only have to pay for the reasonable damages to the residue.

> The Court will offer a special interrogatory to the jury for it to determine whether the remainder tract(s) is an uneconomic remnant. If the answer is yes, a second special interrogatory will ask the jury to state the amount the DOH is to pay for the tract(s). If the answer to special interrogatory number one is no, then the jury will consider the amount of

5

damages to the remainder tract(s) that should be paid to the [Property Owners].

The case was then set for trial on December 8, 2016. At a pretrial conference, Property Owners filed a motion in limine to prohibit the DOH from introducing any evidence of its offer to construct an access road to the northern tract. The circuit court found no binding precedent regarding the DOH's introduction of evidence of its offer to build an access road. Additionally, the court found no authority as to whether the DOH was entitled to mitigate damages to residue property by providing an access road to property landlocked by virtue of the DOH's construction project (Corridor H in this instance). The court requested proposed certified questions from the parties and, thereafter, entered its order certifying three questions to this Court. The three questions, and the circuit court's answers thereto, are as follows:

> 1. When the completion of a highway construction condemnation project by [the DOH] has rendered a large parcel of land (which is otherwise economic) landlocked, is the DOH required to institute a formal condemnation proceeding on the residue or remainder tract without first being given the opportunity to construct an access road to mitigate the landlocked nature of the real estate?
>
> Answer: No because it would be unreasonable to require the DOH to purchase a large tract of land when the landlocked nature of the real estate could be remedied by the construction of an access road at potentially a lesser expense to the taxpayer than the purchase of the entire remainder tract and if the real estate is economic with the provision of an access road.
>
> 2. When the DOH offers to construct an access road to a landlocked remainder tract following the completion of a

highway construction project, do the landowners have the right to refuse the construction of the access road?

Answer: Yes because the landowners should be able to reject an offer which they feel does not provide reasonable access to the real estate or is unreasonable for other reasons, such as that it diminishes the value of the real estate or will create an unreasonable cost to maintain. Should the landowners reject the offer, the matter should proceed to trial in due course for a determination of the fair market value of the taking due to the condemnation action, with consideration given to the landowners' refusal to allow the DOH to construct reasonable access to the real estate.

3.    If landowners should be able to reject an offer to construct an access road to the real estate that has been landlocked following a highway construction project, may the DOH present evidence during the condemnation jury trial that the landowners refused the DOH's offer to construct reasonable access and present to the jury the projected amount to construct an access road in order to mitigate damages to the remainder tract?

Answer: Yes because the jury should be able to consider the mitigation of damages by the proposed access road construction should they find the proposed access road is reasonable and the land would be economic if an access road is provided.

## II.

## STANDARD OF REVIEW

Our standard for reviewing certified questions presented from a circuit court is well established: "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*." Syl. pt. 1, *Gallapoo v. Wal-Mart Stores, Inc.*, 197

7

W. Va. 172, 475 S.E.2d 172 (1996). Thus, we afford plenary consideration to the reformulated certified questions.

## III.

## DISCUSSION

Prior to addressing the issues raised in this proceeding, we exercise our authority to reformulate the questions certified by the circuit court in order to fully address the legal issues therein presented.

> "When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq.* and *W. Va. Code*, 58-5-2 [1967], the statute relating to certified questions from a circuit court of this State to this Court." Syl. Pt. 3, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993).

Syl. pt. 2, *Pyles v. Mason Cty. Fair, Inc.*, 239 W. Va. 882, 806 S.E.2d 806 (2017).[8]

Consistent with our authority to do so, we reformulate the questions herein certified as follows:

> 1. When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project that is subject to the Federal Uniform Relocation Assistance and Real

---

[8] The DOH proposed five reformulated questions to this Court as alternatives to the three questions certified by the circuit court. Because we have exercised our authority to reformulate the questions certified, we do not set out the questions proposed by the DOH.

8

Property Acquisition Policies Act, 42 U.S.C. § 4601 *et seq.*, and when, as a result of the project, a residue tract has been rendered landlocked, is the question of whether the residue has become an "uneconomic remnant" a question of fact to be determined by a jury?

2.     When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project, and when, as a result of the project, the residue is rendered landlocked by the destruction of the preexisting public road access, may the Division of Highways, over the objection of the landowner, mitigate the damage to the residue by restoring reasonable public road access thereto?

3.     When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project, and when, as a result of the project, a residue tract that is not needed by the State for public road purposes has been rendered landlocked, can the trial court require the Division of Highways to acquire the landlocked residue by condemnation?

We will address each of these three questions in turn.

## A.  *"Uneconomic Remnant"*

In its August 26, 2016 order, the circuit court found that the question of whether Property Owners' residue tract is an uneconomic remnant was a proper question to be decided by the jury.  Thus, the first reformulated question asks:

When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project that is subject to the Federal

9

Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601 *et seq*., and when, as a result of the project, a residue tract has been rendered landlocked, is the question of whether the residue has become an "uneconomic remnant" a question of fact to be determined by a jury?

The fact that the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601 et seq. ("the Federal Property Acquisition Act") is applicable to projects such as Corridor H that have received federal funding is well established. For example, this Court previously has observed that

> [t]he Property Acquisition Act applies to federal and federally assisted road construction projects. As a condition of receiving federal assistance for a project resulting in the acquisition of real property, a State agency must agree to comply with the terms of the Act. *See* 42 U.S.C. § 4655; W. Va. Code §§ 54-3-1 to -5 (Repl. Vol. 2000) (implementing the federal Act). The general purpose of the federal Act is "to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in Federal land acquisition practices. . . ." 42 U.S.C. § 4651.

*W. Va. Dep't of Transp., Div. of Highways v. Dodson Mobile Homes Sales & Servs., Inc.*, 218 W. Va. 121, 124-25, 624 S.E.2d 468, 471-72 (2005). [9] Accordingly, we begin our

---

[9] Likewise, under 42 U.S.C. § 4655(a) (2012):

> [n]otwithstanding any other law, the head of a Federal agency shall not approve any program or project or any grant to, or contract or agreement with, an acquiring agency under

10

analysis of this reformulated certified question by looking to the meaning of the term

"uneconomic remnant" in the context of a federally funded project, such as the Corridor H

project, that is subject to the Federal Property Acquisition Act.

Notably, the Federal Property Acquisition Act expressly defines the term

"uneconomic remnant" as follows:

> If the acquisition of only a portion of a property would leave the owner with an uneconomic remnant, the head of the Federal agency concerned shall offer to acquire that remnant. *For the purposes of this chapter, an uneconomic remnant is a parcel of real property in which the owner is left with an interest after the partial acquisition of the owner's property and which the head of the Federal agency concerned has determined has little or no value or utility to the owner.*

---

> which Federal financial assistance will be available to pay all or part of the cost of any program or project which will result in the acquisition of real property on and after January 2, 1971, unless he receives satisfactory assurances from such acquiring agency that—
> > (1) in acquiring real property it will be guided, to the greatest extent practicable under State law, by the land acquisition policies *in section 4651* of this title and the provisions of section 4652 of this title, . . . .

(Emphasis added). *See also Huntington Urban Renewal Auth. v. Commercial Adjunct Co*., 161 W. Va. 360, 367-68, 242 S.E.2d 562, 566 (1978) (acknowledging that "*W. Va. Code*, 54-3-3 [1972] . . . makes the federal real property acquisition policies applicable to state agencies and gives state agencies 'plenary power and authority to adopt rules and regulations, which shall have the force and effect of law, to implement the provisions of . . . [the] federal act . . . .'").

11

42 U.S.C. § 4651(9) (2012) (emphasis added).  *See also* 49 C.F.R. § 24.2(a)(27) (2018) ("The term *uneconomic remnant* means a parcel of real property in which the owner is left with an interest after the partial acquisition of the owner's property, *and which the Agency has determined has little or no value or utility to the owner*." (second emphasis added)).

At the outset, we pause to clarify that, because 42 U.S.C. § 4651(9) is a federal statute, it understandably refers to a "federal agency."  However, as noted above, W. Va. Code §§ 54-3-1 to -5 (LexisNexis 2016) make the Federal Property Acquisition Act applicable to state agencies, such as the DOH, who, among others, fall within the definition of "acquiring agencies" as set out therein.[10]  Accordingly, for purposes of our discussion, we refer to an "acquiring agency" in place of a "federal agency."

---

[10] "Acquiring agency" is defined as

> the State of West Virginia or any department, agency or instrumentality thereof, or any county, municipality or other political subdivision thereof or any department, agency or instrumentality of two or more states or of two or more political subdivisions of a state or states, and any person carrying out a program or project with federal financial assistance which causes a person to be a displaced person within the intent and meaning of the federal act.

W. Va. Code § 54-3-1(2) (LexisNexis 2016).

12

Turning now to our analysis of 42 U.S.C. § 4651(9), we have found no cases interpreting the relevant portion of 42 U.S.C. § 4651(9) that define the term "uneconomic remnant."[11] Property Owners note the circuit court's reliance on *Dodson* as support for its conclusion that the question of whether a residue tract is an "uneconomic remnant" may be decided by a jury. We find no support for this contention in the *Dodson* decision.

The issue addressed by this Court in *Dodson* was whether a corporate landowner was entitled to attorney's fees under the Federal Property Acquisition Act after asserting a counterclaim seeking inverse condemnation. In setting out the procedural facts, the *Dodson* Court acknowledged that, in its counterclaim, the landowner alleged that a .73 acre residue tract was an "uneconomic remnant" that the State should be required to purchase. The trial court in *Dodson* posed the query to the jury by special interrogatories that "*the State did not challenge*." *Dodson*, 218 W. Va. at 124, 624 S.E.2d at 471 (emphasis added). The *Dodson* Court quoted from 42 U.S.C. § 4651(9), and further acknowledged the State's argument that it had "no statutory obligation to acquire the severed .73 acre tract because the [Federal Property Acquisition Act] only imposes the requirement to purchase such tracts *when the head of the State agency makes the preliminary finding that a severed*

---

[11] We note that, prior to 1987, 42 U.S.C. § 4651(9) did not expressly define the term "uneconomic remnant." Instead, the pre-1987 provision simply read: "If the acquisition of only part of a property would leave its owner with an uneconomic remnant, the head of the Federal agency concerned shall offer to acquire the entire property."

*portion of property is an uneconomic remnant.*"  *Dodson*, 218 W. Va. at 124, 624 S.E.2d at 471 (emphasis added).  However, the *Dodson* Court analyzed neither 42 U.S.C. § 4651(9) nor the State's argument related thereto in reaching its ultimate conclusion that the property owner was entitled to attorney's fees under 49 C.F.R. § 24.107.  As a result, we find the *Dodson* Court's apparent endorsement of the circuit court's method of determining whether the tract at issue was an uneconomic remnant to be mere obiter dicta that is not binding on this Court.[12]  *See State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 808 n.8, 591 S.E.2d 728, 734 n.8 (2003) ("We hasten to add that [an] implied conclusion must be necessary to a decision in the case or it is dicta, which neither

---

[12] In this regard, the *Dodson* Court commented that,

> [i]f Appellant had not raised the counterclaim regarding purchase of the .73 acre tract as an uneconomic remnant, the only way Appellant could have sought to be relieved of the continuing tax burden of the unusable land was to petition the circuit court in a separate proceeding for a writ of mandamus to compel the State to take action.  While the use of a counterclaim to reach the question of compensation for the .73 acre tract may be unusual, we see no defensible reason to require the initiation of a second suit by a landowner in light of the clear Congressional intent "to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in [ ] land acquisition practices."  42 U.S.C. § 4651.  Additionally, the regulations governing award of attorneys' and other enumerated fees make no distinction with the method by which a party raises inverse condemnation.

*W. Va. Dep't of Transp., Div. of Highways v. Dodson Mobile Homes Sales & Servs., Inc.*, 218 W. Va. 121, 126, 624 S.E.2d 468, 473 (2005) (footnote omitted).

14

creates precedent . . . nor establishes law of the case." (internal quotations and citations omitted)); *Rogers v. Albert*, 208 W. Va. 473, 477 n.9, 541 S.E.2d 563, 567 n.9 (2000) (per curiam) (commenting that "dicta . . . has no *stare decisis* or binding effect upon this Court"); *In re Kanawha Valley Bank*, 144 W. Va. 346, 382-83, 109 S.E.2d 649, 669 (1959) (observing that "[o]biter dicta or strong expressions in an opinion, where such language was not necessary to a decision of the case, will not establish a precedent").

Thus, finding no applicable precedent to aid our analysis, in applying meaning to 42 U.S.C. § 4651(9) we are guided by the familiar maxims of statutory construction. First, "[t]he primary object in construing a [federal] statute is to ascertain and give effect to the intent of the [Congress]." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). *Accord* Syl. pt. 4, *Dodson*, 218 W. Va. 121, 624 S.E.2d 468. The intent of Congress with respect to the Federal Property Acquisition Act is expressly set forth therein as follows: "to encourage and expedite the acquisition of real property by agreements with owners, to avoid litigation and relieve congestion in the courts, to assure consistent treatment for owners in the many Federal programs, and to promote public confidence in . . . land acquisition practices." 42 U.S.C. § 4651. *Accord Dodson*, 218 W. Va. at 126, 624 S.E.2d at 473.

Guided by this Congressional intent, we next "look . . . to the statute's language. If the text, given its plain meaning, answers the interpretive question, the

language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995). In other words, "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959).

In defining an "uneconomic remnant," the Federal Property Acquisition Act expressly provides that,

> [f]or the purposes of this chapter, an uneconomic remnant is a parcel of real property in which the owner is left with an interest after the partial acquisition of the owner's property *and which the head of the* [*acquiring*] *agency concerned has determined has little or no value or utility to the owner.*

42 U.S.C. § 4651(9) (emphasis added). We find no ambiguity in the operative provision of 42 U.S.C. § 4651(9) that places the duty of determining whether a parcel of real property is an uneconomic remnant, *i.e.*, it has little or no value or utility to the owner, exclusively upon the head of the acquiring agency. Thus, we are foreclosed from endeavoring to construe this language. *Appalachian Power Co.*, 195 W. Va. at 587, 466 S.E.2d at 438. Moreover, by obliging the head of the acquiring agency to determine whether a residue tract is an "uneconomic remnant," the Act furthers the expressed Congressional intent of avoiding litigation with respect to this preliminary determination. Finally, because the head of the acquiring agency, here the DOH, is exclusively tasked with determining

16

whether the parcel remaining after a partial acquisition has "little or no value or utility to the owner," it is axiomatic that such question is not proper for determination by a trier of fact at trial. 42 U.S.C. § 4651(9). Accordingly, we now hold that, when the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project that is subject to the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. § 4601 *et seq*., the question of whether the residue has become an "uneconomic remnant" is a question to be determined exclusively by the Commissioner of Highways.[13]

### B. Mitigation of Damages

In this case the DOH has proposed to construct an access road to remedy the 120-plus acre landlocked northern tract of Property Owners' land, and thereby mitigate the damages caused to this residue by the construction of Corridor H. The DOH estimates the cost of the access road to be approximately $100,000, though the DOH has not developed a specific plan for the proposed alternative access road. The Property owners object to the road, instead desiring to compel the DOH to purchase the entire northern tract, which they

---

[13] We note that this holding has no application to a highway project that is not subject to the Federal Property Acquisition Act.

have estimated to be valued at $449,190. Thus, the second reformulated question addresses the right of the DOH to mitigate damages and asks:

> When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project, and when, as a result of the project, the residue is rendered landlocked by the destruction of the preexisting public road access, may the Division of Highways, over the objection of the landowner, mitigate the damage to the residue by restoring reasonable public road access thereto?

The DOH contends that property owners have no right to reject its decisions concerning how public roads are to be designed, constructed, and maintained. This is so, the DOH asserts, because West Virginia law vests the DOH with broad and sweeping responsibility to determine the needs of the traveling public and to design, construct, and maintain a public road system to meet those needs. *See* W. Va. Code §§ 17-4-39 to -43 (LexisNexis 2017). In addition, citing *West Virginia Department of Transportation, Division of Highways v. Parkersburg Inn, Inc.*, 222 W. Va. 688, 694, 671 S.E.2d 693, 699 (2008), the DOH asserts that, although the law will not permit Property Owners to be cut off from public thoroughfares, they must content themselves with the access route deemed by the DOH as the most compatible with the public welfare. The DOH finally acknowledges that, if the change in public road access to the residue land at issue reduces its fair market value, then Property Owners are entitled to just compensation for such damages as determined by a jury.

18

Property Owners contend that they have found no West Virginia authority allowing the DOH to construct an access road to mitigate the landlocked nature of their real estate. Moreover, they assert that the DOH has no right to construct a replacement access road, and they may refuse it, insofar as they have a right to be compensated for their property exclusively in money.

Under Article III, Section 9 of the West Virginia Constitution, "[p]rivate property shall not be taken or damaged for public use, without just compensation . . . ." It is beyond dispute that "'[t]he right of access to and from a public highway is a property right of which the owner can not [sic] be deprived without just compensation.' *State ex rel. Ashworth v. The State Road Commission et al.*, Point 1 Syllabus, 147 W. Va. 430, [128 S.E.2d 471 (1962).]" Syl. pt. 2, *State ex rel. Woods v. State Rd. Comm'n*, 148 W. Va. 555, 136 S.E.2d 314 (1964). Furthermore, this Court has previously recognized, and we now expressly hold, that "one whose real estate is taken [for public use] is entitled to just compensation for the value of the land taken at the time of taking, and to damages to the residue." *W. Va. Dep't of Transp., Div. of Highways v. W. Pocahontas Props., L.P.*, 236 W. Va. 50, 61, 777 S.E.2d 619, 630 (2015) (internal quotations and footnote omitted). *See also Buckhannon & N.R. Co. v. Great Scott Coal & Coke Co.*, 75 W. Va. 423, 442, 83 S.E. 1031, 1038 (1914) (commenting that "[t]he owner is entitled to the value of the land taken at the time of taking, and to damages to the residue").

19

While our precedent refers to "damages to the residue," for clarification we note that this term is often referred to as "severance damages" in many jurisdictions. *See, e.g.*, *Sys. Components Corp. v. Fla. Dep't of Transp.*, 14 So. 3d 967, 978 (Fla. 2009) ("*Severance damages* are part of the constitutional guarantee of 'full compensation' and reimburse the owner for the reduction in value the taking causes to any remaining land."); *Oakland Cty. Bd. of Cty. Rd. Comm'rs v. JBD Rochester, LLC*, 271 Mich. App. 113, 115, 718 N.W.2d 845, 846-47 (2006) ("Severance damages are damages to the remaining property that are attributable to the taking."); *State ex rel. Comm'r of Transp. v. Marlton Plaza Assocs., L.P.*, 426 N.J. Super. 337, 357, 44 A.3d 626, 638 (App. Div. 2012) ("Where only a portion of the private property is taken, the owner is not only entitled to just compensation for the fair-market value of the portion that has actually been taken, but also for the diminution in the value, if any, of the remaining land, referred to as 'severance damages.'" (internal quotations and citation omitted)); *Cent. Puget Sound Reg'l Transit Auth. v. Heirs & Devisees of Eastey*, 135 Wash. App. 446, 456, 144 P.3d 322, 326 (2006) ("A loss of value to the land that is not taken is referred to as 'severance damages' . . . ." (internal quotations and citations omitted)). *See also* Black's Law Dictionary 396 (7th ed. 1999) (defining "severance damages" "[i]n a condemnation case, [as] damages awarded to a property owner for diminution in the fair market value of land as a result of severance from the land of the property actually condemned; compensation

20

awarded to a landowner for the loss in value of the tract that remains after a partial taking of the land.").

As Property Owners correctly observe, this Court has held that "[i]n an eminent domain proceeding, the landowner has a legal right to be paid exclusively in money the compensation to which he is entitled." Syl. pt. 3, *Bd. of Ed. of Kanawha Cty. v. Shafer*, 147 W. Va. 15, 124 S.E.2d 334 (1962). However, a property owner's right to be compensated in money does not, as Property Owners presume, extinguish the right of the DOH to mitigate damages to a residue for which it will be required to provide such compensation. In *Shafer*, this Court recognized a condemnor's right to mitigate severance damages, and acknowledged the public interest in such mitigation, when it commented that,

> [i]f there is a legal way in which the damage to the residue of the defendants' land may be minimized, certainly it will be in the public interest and to the interest of the landowners that such be done. If it should appear that the taking of the parcel of 1.445 acres deprives the landowners of all means of access to the residue of the tract of 56 acres and renders such residue virtually worthless, certainly the infliction of such damages upon the landowners and the consequent public burden of paying therefor should be avoided if there is a way in which such properly may be done.

*Shafer*, 147 W. Va. at 22, 124 S.E.2d at 338.[14] *See also* W. Va. Code § 54-2-9 (LexisNexis 2016) (directing that the commissioners shall ascertain, among other things, the amount of just compensation for "damage to the residue of the tract *beyond all benefits to be derived*, in respect to such residue, from the work to be constructed" (emphasis added)); W. Va. Code § 54-2-14 (LexisNexis 2016) (requiring condemnation applicant to pay into court, among other things, "the damages, if any, to the residue *beyond the benefits*, if any, to such residue, by reason of the taking" (emphasis added)); W. Va. Code § 54-2-14a (LexisNexis 2016) (same).

Importantly, though, compensation to landowners may not be mitigated by a mere offer to confer some privilege. In this respect, the *Shaffer* Court observed:

> In connection with an exhaustive annotation in 7 A.L.R.2d 364, at page 392, certain principles here involved are summarized as follows: "The courts have frequently pointed out the difference in legal effect between mere promissory

---

[14] The *Shaffer* Court ultimately concluded that a condemnor

has the legal right to take fee simple title to the land sought to be appropriated herein, subject to easements not previously existing, reserved or left to the landowners for the purpose of reducing or minimizing damages to the residue of the defendants' land; and that such taking by the petitioner, subject to the easements set forth and described in the amended petition, will not constitute payment of damages or compensation to the landowners in something other than money.

*Bd. of Ed. of Kanawha Cty. v. Shafer*, 147 W. Va. 15, 25, 124 S.E.2d 334, 340 (1962).

22

statements, stipulations, and declarations on the one hand, and (1) reservations of property rights in the landowner; (2) valid and contractual, hence binding stipulations; and (3) limited condemnation properly effected at the proper time. If a particular case involves one of these three matters rather than a promissory matter, the binding stipulation, or the reservation of rights, easements, etc., to the property owner, or the limited condemnation is properly to be considered in determining the landowner's damages or compensation."

147 W. Va. at 22, 124 S.E.2d at 338.

Other courts have reached similar conclusions and, in so doing, have acknowledged the need to balance the interest of landowners to just compensation with the interest of the state to fiscal responsibility and, in particular relation to landlocked property, to avoiding the creation of abnormal quantities of landlocked real estate. *See, e.g.*, *State ex rel. State Highway Comm'n v. Grenko*, 80 N.M. 691, 694, 460 P.2d 56, 59 (1969) ("Particularly where the State or one of its political subdivisions is the condemnor, the public interest is involved as well as the interest of the owner of the property sought to be taken, and the owner ought not to be allowed a windfall where he is not entitled to it.").

While *Shaffer* did not involve landlocked realty, a few courts have addressed this issue, albeit in a slightly different context, and provide some guidance for our resolution of this matter. For example, in the case of *Andrews v. State*, 248 Ind. 525, 229 N.E.2d 806 (1967), a landowners' property had been rendered landlocked as a result of the

23

construction of a controlled access highway. In reaching its ultimate conclusion in the

case, the *Andrews* court commented:

> In truth and in fact, we must conclude that a service road would alleviate a land-locked condition of the Baldwin property *and would certainly have the effect of reducing the amount of damages payable to the Baldwins. If the State of Indiana is not in a position to minimize the damages paid to land owners, then the cost of Interstate Highways would soar astronomically and Indiana would be dotted abnormally with land-locked real estate.*

*Id.* at 533, 229 N.E.2d at 810 (emphasis added).

New Mexico likewise has addressed a similar issue. In *State ex rel. State Highway Comm'n v. Grenko*, 80 N.M. 691, 460 P.2d 56, the highway commission condemned a portion of land belonging to Grenko, which divided the property into two parcels, for the construction of an interstate. During the condemnation trial, it was discovered that presumed access between the two Grenko tracts, and from the northern Grenko tract to the state highway system, did not exist. The highway commission sought and was granted, over Grenko's objection, permission from the trial court "to amend its map by showing the access roads extending to the Grenko boundaries, and agreed to

24

construct the necessary connecting link so as to provide access between the two tracts and to the system of highways by way of the county road." *Id.* at 692, 460 P.2d at 57.[15]

On appeal, the Supreme Court of New Mexico opined that the case "turns on whether the State could mitigate or diminish consequential damages by acquiring a right-of-way easement and agreeing to provide access from the northern tract over county roads to the main highway system, after filing its complaint and after entry of the order of possession." *Id.* The landowner, Grenko, relying on New Mexico law providing that the right to damages shall accrue as of the date the condemnation petition is filed,[16] contended that

> because the Highway Commission failed to provide access to the northern tract at the date of the notice in the eminent domain proceeding, even though because of an error, it became landlocked and consequential damages became fixed as of that date. It is argued that those damages cannot be mitigated by

---

[15] In order to correct the lack of access, "the Highway Commission obtained an easement for a right of way over federally owned lands." *State ex rel. State Highway Comm'n v. Grenko*, 80 N.M. 691, 692, 460 P.2d 56, 57 (1969).

[16] Likewise, under West Virginia law "[t]he measure of just compensation to be awarded to one whose interest in real estate is taken for a public use in a condemnation proceeding is the fair market value of the property at the time of the taking." Syl. pt. 1, *W. Va. Dep't of Transp., Div. of Highways v. W. Pocahontas Props., L.P.*, 236 W. Va. 50, 777 S.E.2d 619 (2015). *See also* Syl. pt. 1, *W. Va. Dep't. of Highways v. Roda*, 177 W. Va. 383, 352 S.E.2d 134 (1986) ("In eminent domain proceedings, the date of take for the purpose of determining the fair market value of property for the fixing of compensation to be made to the condemnee is the date on which the property is lawfully taken by the commencement of appropriate legal proceedings pursuant to *W. Va. Code*, 54-2-14a, as amended.").

25

the State, nor can the petition be amended to agree to provide access to the tract.

*Id.* at 693, 460 P.2d at 58.  The New Mexico Supreme Court rejected this argument, reasoning that

> [m]ost eminent domain statutes fix time as of which property taken or damaged is to be valued, the reason being that values of real estate are not constant and sometimes change greatly before the proceedings are completed.  3 Nichols on Eminent Domain (3d Ed.) § 815.  Our statute is designed to avoid such problems of fluctuations in value.  The amendment [of the Highway Commission's petition] does not violate this purpose of the statute because it does not change the date of valuation, only the extent of the condemnation on the valuation date.

*Id.*  The *Grenko* Court also rejected the landowners' argument that a promise to construct access to their property is no substitute for compensation in money.  In this regard, the *Grenko* Court explained that

> the Grenkos are being compensated in money for all rights which they are losing.  *State ex rel. Eastvold v. Superior Court* [*for Snohomish Cty*., 48 Wash. 2d 417, 294 P.2d 418 (1956)].  The State is merely attempting to *limit the condemnation*, a matter that is properly to be considered in determining the landowners' damages.  See 7 A.L.R.2d 364, 392-393.  Moreover, the Grenkos are amply protected; if the State deviates from its construction plans in a manner to cause further loss to the landowners, *i.e*., fails to provide the access, another taking or damaging results for which just compensation must again be assessed.

*Grenko*, 80 N.M. at 695, 460 P.2d at 60.  *See also Mich. State Highway Comm'n v. Davis*, 38 Mich. App. 674, 679-80, 197 N.W.2d 71, 73-74 (1972) (finding it proper to admit evidence of highway commission's revised plans to restore access to parking lot impeded

26

by roadway construction, which reduced severance damage appraisal from $79,600 to $25,650, and commenting "[s]ince we are dealing here not with the value of the property taken, but rather with the damage done to the residue as a result of the taking, we find no bar to the introduction of evidence bearing on those damages despite the fact that the evidence concerns facts occurring after the date of the taking. The trial court's ruling excluding such evidence was, therefore, in error."); *State Highway & Transp. Comm'r v. Linsly*, 223 Va. 437, 444, 290 S.E.2d 834, 838 (1982) (remarking that "[t]he Commissioner was entitled to show in mitigation of damages that he would construct a service road to provide reasonable substitute access to the highway"); *State ex rel. Eastvold*, 48 Wash. 2d at 423, 294 P.2d at 422 (finding no error in trial court's allowance of evidence that damages to landowers' property would be mitigated by construction of a cattle guard and observing that "if damages may be avoided by a waiver or stipulation definite and certain in its terms, which will fully protect the rights of all parties concerned, there is no reason why such a stipulation should not be received and acted upon." (quotations and citations omitted)).

The foregoing authorities plainly establish that the DOH may mitigate severance damages by restoring public road access without the agreement of a landowner so long as the DOH is somehow obligated to construct the road. A mere promise to do so is insufficient. Furthermore, the authority to determine the proper location of the access road lies with the DOH:

27

> "The Constitution does not undertake to guarantee to a property owner the public maintenance of the most convenient route to his door. The law will not permit him to be cut off from the public thoroughfares, but he must content himself with such route for outlet as the regularly constituted public authority may deem most compatible with the public welfare. When he acquires [property], he does so in tacit recognition of these principles."

*State ex rel. Woods v. State Rd. Comm'n*, 148 W. Va. at 560-61, 136 S.E.2d at 318 (quoting *Richmond v. City of Hinton*, 117 W. Va. 223, 227, 185 S.E. 411, 412 (1936)). *See also Parkersburg Inn,* 222 W. Va. at 694, 671 S.E.2d at 699 (approving a jury instruction that stated, in relevant part, "[t]he law will not permit the Respondents to be cut off from public thoroughfares, but they must content themselves with such route for outlet as the West Virginia Division of Highways may deem most compatible with the public welfare as long as access is reasonable and adequate. When the Respondents acquired property in the State of West Virginia, they did so in tacit recognition of these principles.").

Accordingly, we now hold that, when the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project, and when, as a result of the project, the residue is rendered landlocked by the destruction of the preexisting public road access, the Division of Highways may, without the landowner's consent, mitigate the damage to the residue by ensuring that the work performed by the Division of Highways is completed or revised in a manner that assures reasonable public road access

28

thereto.  The Division of Highways must commit to ensure access by more than a mere promissory statement or declaration.  Instead, the Division of Highways must protect the rights of the parties concerned by obligating itself to provide public road access by amending its condemnation petition, filing a new petition, or by some form of binding stipulation that is definite and certain in its terms.

### C.  *Acquisition of Property Not Needed for State Road Purposes*

Because the Property Owners seek to compel the DOH to purchase their northern tract, which was not needed by the DOH in relation to its construction of Corridor H, we briefly address the following reformulated question:

> When the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project, and when, as a result of the project, a residue tract that is not needed by the State for public road purposes has been rendered landlocked, can the trial court require the Division of Highways to acquire the landlocked residue by condemnation?

The authority of the Commissioner of Highways to acquire property that it does not need for state road purposes is addressed in the West Virginia Code as follows:

> In connection with the acquisition of real property, or any interest or right therein, for state road purposes, the commissioner may acquire, *by any lawful means other than by eminent domain or condemnation*, an entire lot, block, or tract of real property, or any portion thereof, even though it is not needed for present or presently foreseeable future state road purposes, if uneconomic remnants would be left the owner or if severance or consequential damages to the remainder make

29

acquisition of the additional property more economical to the State.

W. Va. Code § 17-2A-18 (LexisNexis 2017) (emphasis added). We find the foregoing provision is unambiguous in allowing the Commissioner to acquire certain property, "even though it is not needed for present or presently foreseeable future state road purposes," by "any lawful means *other than by eminent domain or condemnation*." *Id.* (emphasis added). Because it is unambiguous, we are constrained to apply its plain terms. *See* Syl. pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."). Insofar as W. Va. Code § 17-2A-18 expressly excludes eminent domain or condemnation as means for obtaining property that is not needed by the DOH for state road purposes, a court is without authority to impose such an obligation.

Moreover, this Court has previously recognized that

"'[t]he sole discretion to determine what quantity of land is necessary for a public use is vested in the agency resorting to eminent domain, which discretion will not be interfered with by the courts unless it has been abused.' Syllabus Point 2, *State v. Bouchelle*, 137 W. Va. 572, 73 S.E.2d 432 (1952)." Syllabus point 1, *Mr. Klean Car Wash, Inc. v. Ritchie*, 161 W. Va. 615, 244 S.E.2d 553 (1978).

30

Syl. pt. 4, *Potomac Valley Soil Conservation Dist. v. Wilkins*, 188 W. Va. 275, 423 S.E.2d 884 (1992). *See also* Syl. pt. 3, *State ex rel. State Rd. Comm'n v. Prof'l Realty Co.*, 144 W. Va. 652, 110 S.E.2d 616 (1959) ("The necessity for taking land for a state highway improvement project, and the amount of land reasonably necessary for that purpose, are matters within the sound discretion of the state road commissioner; and such discretion will not be interfered with by the courts unless, in the exercise of such discretion, he has acted capriciously, arbitrarily, fraudulently or in bad faith.").[17]

---

[17] This Court has also made clear that,

> "'[i]If a highway construction or improvement project results in probable damage to private property without an actual taking thereof and the owners in good faith claim damages, the West Virginia Commissioner of Highways has a statutory duty to institute proceedings in eminent domain within a reasonable time after completion of the work to ascertain the amount of damages, if any, and, if he fails to do so, after reasonable time, *mandamus will lie to require the institution of such proceedings*.' Syllabus point 1, *State ex rel. Rhodes v. West Virginia Department of Highways*, 155 W. Va. 735, 187 S.E.2d 218 (1972)." Syl. Pt. 2, *Shaffer v. West Virginia Dep't of Transp., Div. of Highways*, 208 W. Va. 673, 542 S.E.2d 836 (2000).

Syl. pt. 4*, W. Va. Dep't of Transp., Div. of Highways v. Newton*, 238 W. Va. 615, 797 S.E.2d 592 (2017). Condemnation proceedings were initiated by the DOH in the case *sub judice*; therefore, Property Owners had no need to resort to mandamus.

31

Although landowners may not compel the DOH to acquire by condemnation land that is not necessary for state road purposes, such landowners are entitled to recover just compensation for damages to their residue. *See* Syl. pt. 2 herein; *W. Pocahontas Props.,* 236 W. Va. at 61, 777 S.E.2d at 630 (observing that "one whose real estate is taken [for public use] is entitled to just compensation for the value of the land taken at the time of taking, and to damages to the residue" (internal quotations and footnote omitted)); *Great Scott Coal & Coke*, 75 W. Va. at 442, 83 S.E. at 1038 (commenting that "[t]he owner is entitled to the value of the land taken at the time of taking, and to damages to the residue").

Accordingly, we now hold that, when the West Virginia Department of Transportation, Division of Highways, initiates a condemnation proceeding that involves a partial taking of land in connection with a highway construction project, and when, as a result of the project, a residue tract that is not needed by the State for public road purposes has been rendered landlocked, the trial court cannot require the Division of Highways to acquire the landlocked residue by condemnation.

## IV.

## CONCLUSION

Having answered the reformulated certified questions, we remand this case to the Circuit Court of Grant County for further proceedings consistent with this opinion.

Reformulated Certified Questions Answered.